**STUTZ MOTOR CAR OF AMERICA, INC., Plaintiff,**

v.

**REEBOK INTERNATIONAL, LTD., Defendant.**

**No. 93–4433.**

United States District Court, C.D. California.

Sept. 1, 1995.

---

3. *This is not an issue before this Court.*

Stephen Lewis Dunne, The Dunne Law Firm, Solana Beach, CA, Walter J. Lack, Adam D. Miller, Engstrom Lipscomb & Lack, Los Angeles, CA, for plaintiff.

Bennett A. Bigman, Joseph R. Taylor, Stein & Kahan, A Law Corporation, Santa Monica, CA, David K.S. Cornwell, Andrea G. Reister, Sterne, Kessler Goldstein & Fox, Washington, DC, Mark P. Szpak, James S. DeGraw, Ropes & Gray, Boston, MA, for defendant.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND ON MOTION FOR AWARD OF ATTORNEYS' FEES

BAIRD, District Judge.

## I. INTRODUCTION

Defendant has moved this Court for summary judgment on all claims asserted against it by plaintiff. Having reviewed all pertinent papers on file herein, including all supplemental papers filed by the parties, and having considered the argument of counsel, the Court hereby ORDERS, for the reasons set forth below, that defendant's motions for summary judgment are hereby GRANTED. Plaintiff's complaints are therefore ORDERED DISMISSED and judgment is ORDERED ENTERED accordingly.

Defendant has also moved this Court for an award of attorneys' fees under 35 U.S.C. § 285. For the reasons set forth below, this motion is hereby DENIED.

## II. FACTUAL BACKGROUND

The following facts, and any others so indicated below, are uncontroverted. Plaintiff Stutz Motor Car of America, Inc. is the owner, by assignment from Antonio Signori, of United States Patent No. 4,610,099 ('099 Patent), which was issued on September 9, 1986. The invention disclosed in the patent "contemplates a shock-absorbing shoe sole which provides adjustably inflated pneumatic support at the rear half of the sole, and a graduated reduction of shock-absorbing from the inflated support region, to a forefoot-support region of minimum compliant yieldability." ('099 Patent, Abstract.) The patent consists of eighteen claims, four of which (1, 11, 12, and 18) are independent.

Defendant Reebok International, Ltd., a well known manufacturer of athletic shoes and clothing, markets a line of shoes under the trademark "The Pump." Broadly speaking, Reebok's Pump shoes feature internal air bladder devices that, when inflated, provide the wearer with cushioning, support, and an individualized fit.

Stutz brings this action alleging that Reebok misappropriated Stutz's trade secret in the design of The Pump line of shoes and, further that certain of these shoes infringe the '099 Patent.

## III. PROCEDURAL HISTORY

On July 27, 1993, defendant removed this action from the Los Angeles County Superior

Court. Federal jurisdiction was predicated on diversity of citizenship since the patent infringement claims had not yet been joined. The subsequent tortured procedural history[1] of this case has resulted in two operative complaints: (1) plaintiff's first amended complaint, filed September 13, 1993, wherein plaintiff states its trade secret claims, and (2) a first supplemental complaint, filed August 22, 1994, wherein plaintiff states its claims for patent infringement. (*See* Stipulation and Order Re: Operative Pleadings filed Sept. 14, 1994.) Reebok has answered both of these complaints.

Reebok moved for summary judgment on both of plaintiff's operative complaints. In response, plaintiff filed a motion for a continuance of the hearing on this motion pursuant to Federal Rule of Civil Procedure 56(f). The Court granted plaintiff's motion, in part because plaintiff had substituted counsel shortly before its opposition papers to defendant's motions were due to be filed.[2]

Following the discovery conducted after plaintiff's Rule 56(f) request, oral argument was heard on the summary judgment motions.[3] At this hearing, the Court first learned that plaintiff's motion to compel production of documents from defendant was pending before the magistrate judge. As a grant of summary judgment while a motion to compel discovery responses was pending would have likely violated Rule 56(f), *see Garrett v. City of San Francisco*, 818 F.2d 1515, 1518 (9th Cir.1987); *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306 n. 1 (9th Cir.1986), the Court held the summary judgment motions in abeyance pending resolution of the discovery dispute. Thereafter, United States Magistrate Judge Robert Block granted plaintiff's discovery motion and ordered Reebok to produce all deposition transcripts from the so-called *Design Continuum/Spalding* action. In light of Judge Block's ruling, this Court granted plaintiff leave to file supplemental opposition to defendant's summary judgment motions for the limited purpose of bringing to the Court's attention any evidence that raised a triable issue of fact discovered from the *Design Continuum/Spalding* transcripts.

In response to Judge Block's order, Reebok forwarded to plaintiff's counsel twelve deposition transcripts from the referenced action. After reviewing this material, plaintiff filed supplemental opposition papers. Therein, plaintiff argues two points, which are discussed in turn.

First, plaintiff suggests that it should be allowed to depose Design Continuum employee Harvey Koselka, who is apparently identified in the transcripts produced by Reebok. Plaintiff contends that Koselka might have information on the disclosure of Stutz's purported trade secret to Reebok. Plaintiff further contends that this deposition should be allowed since no past discovery responses "revealed that Koselka was the individual responsible for working on the Stutz air bladder concept." (Pl.'s Supp. Opp'n at 2.) Plaintiff's contention is frivolous. As set forth in Reebok's supplemental response, Koselka was identified in discovery responses as early as July 1994. As this Court has afforded plaintiff every reasonable opportunity to conduct discovery, and then some, and as plaintiff has failed to advise the Court how this further deposition could possibly avert the unfavorable result discussed below, the request for this additional discovery is hereby DENIED.

Second plaintiff argues that Reebok failed to produce all deposition transcripts for the

---

1. Over the course of the litigation, the Court has sanctioned plaintiff's counsel in excess of $14,-000 for, inter alia, a pattern of filing inadequate pleadings.

2. Inexplicably, Stutz's former lawyer, Stephen L. Dunne, was substituted back in for plaintiff after the Court acquiesced to the Rule 56(f) request. At the later hearing on Reebok's summary judgment motion, Dunne argued Stutz's opposition without assistance from the "new" lawyer, Adam D. Miller. Further, all supplemental filings following the summary judgment hearing have been made by Dunne.

The natural inference to be drawn from the conduct of plaintiff's counsel is disturbing to the Court. If it was clearer that the referenced substitution was done as a ruse to convince the Court to grant the Rule 56(f) request, substantial sanctions would be assessed.

3. The Court's tentative written order on defendant's motions was in favor of Reebok on all claims asserted by plaintiff.

*Design Continuum/Spalding* action. Specifically, plaintiff claims that no transcripts from the *Design Continuum* case were included in the material forwarded by Reebok's counsel. This argument is also frivolous. As is clear from the declarations of counsel involved in the *Design Continuum* and *Spalding Cases,* it was agreed by the parties to those actions that depositions from the *Spalding* case were to be used in both the *Spalding* and *Design Continuum* cases. The parties entered into this stipulation since the issues presented in both cases overlapped. Furthermore, these declarations also make it clear that transcripts for all deponents of which anyone has record have in fact been produced. Stutz makes only wild allegations that certain unidentified transcripts might exist somewhere, although the names of deponents and other similarly important matters are not mentioned.

As plaintiff has identified *no* relevant facts in its supplemental filing, it perforce has identified no genuine factual dispute that would cause this Court to change its position from that reflected in its tentative order on summary judgment.

## IV. ANALYSIS

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be entered against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party moving for summary judgment may carry its initial burden by pointing out to the district court that there is an absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. However, when the moving party bears the burden of persuasion on the issue at trial—for example, a defendant moving for summary judgment on the basis of an affirmative defense—"that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331, 106 S.Ct. at 2557

(Brennan, J., dissenting); *Houghton v. South,* 965 F.2d 1532, 1536–37 (9th Cir.1992).

To avoid summary judgment, the non-movant must set forth specific facts showing that there remains a genuine issue of material fact for trial. *Id.* 477 U.S. at 324, 106 S.Ct. at 2553. A factual dispute is genuine if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513–14. If the non-moving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

■ Although older cases may suggest or even state the contrary, recent decisions of the federal circuit have "repeatedly emphasized that summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1561 (Fed.Cir.1988) (internal quotation marks omitted); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir. 1995), *cert. granted* —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995). And, as with any other case, summary judgment is appropriate in patent litigation when there is no genuine dispute as to any material fact. *Avia Group,* 853 F.2d at 1561; *Winner Int'l Corp. v. Wolo Mfg. Corp.,* 905 F.2d 375, 376 (Fed.Cir.1990). "Thus, the motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577 (Fed.Cir.1989).

### B. INITIAL MATTERS

Two matters should be addressed before delving into the merits of this case. Plaintiff suggests that defendant's motion should be denied for violation of Local Rule 3.10, which requires that memoranda of points and authorities shall not exceed thirty-five pages in length unless permitted by order of the dis-

trict judge. Plaintiff argues that defendant has violated this rule by filing two briefs (one addressing the trade secret claims and the other addressing the patent claims), which combined exceed the thirty-five page limitation.

As plaintiff's past stumblings have resulted in two operative complaints, as this is a relatively complex patent dispute, and as defendant's papers are not cumulative or prolix, the Court FINDS that Local Rule 3.10 may not be used as a basis for denying the instant motions.

Plaintiff also suggests that the motions should be denied since Reebok has failed to fully respond to discovery. This argument is specious. This action has been pending in the district court since July of 1993 and, from the record before the Court, it appears that plaintiff propounded little or no discovery until defendant filed the instant motions for summary judgment in November 1994. Additionally, the Court, in granting relief under Rule 56(f), bent over backward to accommodate plaintiff's alleged need for more time for discovery.[4]

Thus, the Court FINDS that plaintiff's request to deny the instant motions based on inadequate discovery responses, to the extent that such an argument is made, must be summarily rejected.

### C. STATE LAW (TRADE SECRET) CLAIMS

Plaintiff's first amended complaint alleges causes of action for: (1) fraud; (2) misappropriation and conversion of trade secret; (3) unfair competition under California Business & Professions Code §§ 17200 et seq.; (4) tortious interference with prospective economic advantage; and (5) an accounting. The Court has previously determined that each of these claims is "dependent upon the existence of a 'trade secret' owned by plaintiff." (Order of Dec. 6, 1988 at 4 & n. 1.)

Defendant attacks these trade secret claims, arguing that (1) the issuance of the '099 Patent extinguished plaintiff's trade secret and (2) that these claims are time barred.

### 1. PUBLIC DISCLOSURE OF TRADE SECRET

Under California law, to which this Court must look with respect to these state law claims, a trade secret is defined as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal.Civ.Code § 3426.1(d) (West Supp.1995). In light of this requirement of secrecy, it is clear that an unprotected disclosure of the holder's secret terminates the existence of the trade secret. *E.g., Vacco Indus., Inc. v. Van Den Berg*, 5 Cal.App.4th 34, 50 (1992), *review denied; Sinclair v. Aquarius Elecs., Inc.*, 42 Cal.App.3d 216, 223–24, 116 Cal. Rptr. 654 (1974).

It is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain.[5] *Rototron Corp. v. Lake Shore Burial Vault Co.*, 712 F.2d 1214, 1215 (7th Cir.1983). Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and "the patentee's only protection is that afforded under the patent law." *Id.* This blackletter rule is rooted in principles of the supremacy of federal law. *Id.* ("These provisions of federal patent law prevail over any inconsistent State remedies.").

---

4. Note also that the Court on at least three occasions (telephone conference, ex parte motion, and inter partes motion) denied defendant's requests to limit the scope of discovery available to plaintiff. Stutz has thus been afforded ample opportunity to both propound and secure responses to discovery.

5. The United States patent laws require that a patent specification contain "a written description of the invention" to be patented. 35 U.S.C. § 112.

■ Here, plaintiff contends that its agent, William Cohen, contacted Reebok in May 1986 "for the purpose of exploring Reebok's interest in manufacturing and/or marketing athletic footwear utilizing plaintiff's air bladder trade secret." (First Am.Compl. ¶ 12.) The gravamen of plaintiff's state law claims is thus that Reebok used plaintiff's trade secret in the development of The Pump shoe line.

Plaintiff Stutz's Rule 30(b)(6) designee, Warren Liu, has stated in deposition testimony that the trade secret in issue here is the air bladder, and only the air bladder.[6] (Bigman Decl., Ex. 8 at 105.) Plaintiff has, however, admitted that its "air bladder concept and design" (the trade secret) were disclosed in the '099 Patent, which issued on September 9, 1986. (First Am.Compl. ¶ 10.) Additionally, this Court has previously determined that "the information disclosed to Reebok in May of 1986 was contained in the ['099 Patent]." (Order of Dec. 6, 1993.) Thus, as plaintiff's trade secret was extinguished in September 1986 with the issuance of the '099 Patent, Reebok could only be liable on plaintiff's trade secret claims for products incorporating the trade secret that were sold by defendant prior to the issuance date of the patent. See Timely Prods. Corp. v. Arron, 523 F.2d 288, 304 (2d Cir.1975) (holding that plaintiff could recover only damages sustained "as a result of the sale of [the accused product] by [defendant] prior to the [issuance] date"); Trenton Indus. v. A.E. Peterson Mfg. Co., 165 F.Supp. 523, 533 (D.Cal. 1958) (holding that plaintiff could recover royalties only for products manufactured by defendant after disclosure of secret but before issuance of patent).

Here, it is undisputed that Reebok did not begin working with air bladders until 1988 and did not manufacture, market, or sell any of its Pump shoes until 1989. (Litchfield Decl. ¶¶ 9–11.) It would thus appear, since Reebok did not use plaintiff's trade secret, if at all, until well after issuance of the patent, that plaintiff's remedies must be confined to those afforded under the patent laws.

Plaintiff offers little in the way of opposition on this ground, arguing only that "other" secrets (besides the air bladder) were disclosed to Reebok. In support of this assertion, Stutz states only that Cohen, former agent of Stutz, showed Reebok a working model of a pump and that Jim O'Donnell, former president of Stutz, gave Reebok an idea for putting a pump "on board" the shoe. (Opp'n at 4–5 (citing Cohen Dep. at 14, 18; O'Donnell Dep. at 119–21).) Significantly, plaintiff has neither alleged, nor offered any evidence to even suggest, that Reebok used these "other" secrets in the design or manufacture of its Pump line of shoes.

■ Additionally, and perhaps more importantly, the Court finds that plaintiff must be judicially estopped from arguing now, in a desperate attempt to avert summary judgment, that these "different" trade secrets are really the subject of its claims. See Morris v. California, 966 F.2d 448, 452 (9th Cir.) ("As a general principle, the doctrine of judicial estoppel bars a party from taking inconsistent positions in the same litigation.") (citing Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 716 (9th Cir.1990); Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990); In re Corey, 892 F.2d 829, 836 (9th Cir.1989), cert. denied, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); Stevens Tech. Servs. v. SS Brooklyn, 885 F.2d 584, 588 (9th Cir.1989)), cert. denied, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). The Court has relied on plaintiff's previous assertions, and in fact has found in a written order that only the one purported secret has been raised in this lawsuit. See Morris, 966 F.2d at 452 (stating that judicial estoppel may apply where court adopts statement made earlier in litigation). Further, as this is the only secret identified by Reebok's 30(b)(6) designee, as it is the only secret espoused since the filing of the amended complaint in September 1993, (see First Am.Compl. ¶¶ 10, 12), and since Reebok has confined its defense in this action to that secret, it would be inequitable in the extreme to allow plaintiff to play fast and loose with its legal theories

6. When asked in deposition, "What is the trade secret that Stutz contends that Reebok misappropriated?", Liu responded "Air bladder." (Bigman Decl., Ex. 8 at 105.) Liu further responded "Yes," without qualification, when asked "Is that all there is to the trade secret?" (Id.)

and, thereby, threaten or actually derogate the integrity of the judicial process.

Additionally, and based on the foregoing, the Court finds that these assertions, which contradict the prior sworn testimony of Liu are sham, as they have been made solely in hopes of creating an issue of fact. *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir.1991) (stating that, upon finding subsequent contradictory affidavit is "sham," district court may reject affidavit on summary judgment); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir.1975) (holding that subsequent affidavit contradicting prior sworn testimony does not create genuine issue of fact); *McCray v. Casual Corner, Inc.*, 812 F.Supp. 1046, 1048 (C.D.Cal.1992) (same).

Based on the evidence submitted by Reebok on this issue, no reasonable jury could return a verdict at trial in favor of plaintiff. Thus, for the foregoing reasons, summary judgment is hereby GRANTED in favor of defendant Reebok on the ground that Reebok did not make use of plaintiff's trade secret, if at all, before the secret was placed in the public domain upon issuance of the '099 Patent.

### 2. STATUTE OF LIMITATIONS

Separately and alternatively, Reebok moves for summary judgment on the state law complaint on the theory that the claims therein are time barred.

#### a. FIRST, SECOND, FOURTH, AND FIFTH CLAIMS

The longest period of limitations provided for under plaintiff's first, second, fourth, and fifth [7] claims is three years. *See* Cal.Civ. Proc.Code § 338(d) (West Supp.1995) (providing that fraud claim must be brought within three years of discovery of facts constituting fraud); Cal.Civ.Code § 3426.6 (West Supp.1995) (providing that misappropriation and conversion of trade secret claim must be brought within three years of when conduct should have been discovered); Cal.

Civ.Proc.Code § 339(1) (West Supp.1995) (providing that claim based on obligation not founded on instrument of writing, such as interference with prospective advantage, must be brought within two years).

■ Reebok contends that the clock on plaintiff's claims began to tick in February 1989 when Reebok displayed its Pump shoes at the Sporting Goods Manufacturers' Association trade show in Atlanta, which is asserted to be the largest trade show in the footwear industry. Media articles describing the introduction of the Pump appeared in the *New York Times* on February 14, 1989 and in *Footwear News* on February 13, 1989. (Bigman Decl., Exs. 5–6.) Additionally, plaintiff's agent Cohen admits to being present at the Atlanta show and testified in deposition that he would have seen the Pump if it was displayed. (*Id.*, Ex. 11 at 176.)

Reebok alternatively contends that, even if Stutz did not know about the Pump in February, it certainly should have discovered the Pump by November 1989. It is uncontroverted that Reebok launched an advertising blitz for the Pump in September 1989, with print ads or articles appearing in *The Los Angeles Times, The New York Times, The New York Daily News, The Boston Globe, The Miami Herald, The Chicago Sun–Times, The San Francisco Examiner, The Atlanta Constitution, The Houston Chronicle, USA Today, The Wall Street Journal, Newsweek,* and *Footwear News.* (Rice Decl., Exs. 1–20.) Additionally, as of November 1989, hundreds of retail stores throughout the country carried Reebok's Pump shoes. (Trembath Decl. ¶¶ 4–6.)

With respect to actual knowledge, the testimony of Stutz's own employees indicates that plaintiff knew of Reebok's product by November 1989. To wit, Warren Liu, plaintiff's designee, has testified by declaration that Stutz's New York offices closed in 1989. (Liu Decl. ¶ 7.) Stutz employees Richard Curotto and Nettie Singer both testified in deposition that they discussed with Liu, prior

---

**7.** Plaintiff's fifth cause of action, for an accounting, is an action in equity, and therefore depends on the "nature of the right being sued upon" for its period of limitation. *Estate of Peebles,* 27 Cal.App.3d 163, 166, 103 Cal.Rptr. 560 (1972).

As the nature of the right being sued on here is the trade secret, (*see* Order of Dec. 6, 1988 at 4 & n. 1), the three year period of limitations applicable thereto would also apply to the accounting claim.

to the offices being closed, Reebok's Pump shoes and possible legal claims against Reebok. (Bigman Decl., Ex. 1 at 44–47; Ex. 2 at 62–68.) Additionally, Singer confirms that she read of the Pump, probably in *The Wall Street Journal,* while still employed in the New York offices. (*Id.,* Ex. 2 at 62–68.)

In opposition, plaintiff contends that it did not have actual knowledge of the Pump at the times asserted by defendant and that defendant's showing is insufficient to establish that the advertisement and sale of the shoes imputed constructive knowledge to Stutz. Plaintiff apparently bases its actual knowledge argument on the declaration of Liu, in which he states that he did not know of "prior dealings on the patent" until April 1991. (Liu Decl. ¶ 10.) First, having no "prior dealings on the patent" is not the same as lacking knowledge of Reebok's design; thus, Liu's statement on its face does not contradict Reebok's assertion of actual knowledge. Further, this argument obviously overlooks the sworn testimony of the Stutz employees who were on notice of the alleged misappropriation before the end of 1989. Liu's statements are also inexplicably contrary to the statements made by Curotto and Singer wherein they specifically recalled discussions with Liu prior to the close of the New York offices in 1989. The Court FINDS, therefore, that Stutz's employees and agents had actual knowledge of the Pump shoes and alleged use of the trade secret in 1989.

Stutz also argues that Reebok's advertising efforts were insufficient to establish Stutz's constructive knowledge,[8] assuming for the sake of argument that Stutz did lack actual knowledge. Reebok relies primarily on *United Klans of America v. McGovern,* 621 F.2d 152, 154 (5th Cir.1980), wherein the court held that constructive knowledge of the facts giving rise to a claim were imputed to plaintiffs in light of "widespread publicity" of those facts. Although plaintiff correctly notes that the *United Klans* plaintiffs could also be charged with actual knowledge, that fact does not vitiate the court's clear determination that widespread publicity alone is sufficient for constructive knowledge. Based on the advertising, media reporting, and distribution of the Pump line of shoes described above, the Court does FIND that sufficient widespread publicity existed for plaintiff to be charged with constructive knowledge of the Reebok products and the potential use of Stutz's trade secrets. (*See* Rice Decl. *passim;*[9] Trembath Decl. ¶ 5.[10])

As it is clear from the foregoing that Stutz had actual *and* constructive knowledge of the accused Reebok product and the use of plaintiff's purported secret by February 1989, or at the very latest by the end of 1989, the Court FINDS that the applicable statutes of limitations began to run at that time. And, since plaintiff's complaint was filed on February 10, 1993, in excess of three years after the last day of 1989, plaintiff's first, second, fourth, and fifth claims are time barred, thus rendering summary judgment for defendant appropriate. *See Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 848 (9th Cir.1976) (whether plaintiff knew or reasonably should have known of its claim can be decided as matter of law where facts are undisputed).

■ In a last-ditch effort to avert this unfavorable result, plaintiff argues that the statute of limitations should be equitably tolled since Reebok fraudulently concealed its use of the purported trade secrets. This is the first appearance in the litigation of this theory.

---

8. Plaintiff's contention that California's limitations period for fraud actions begins to run only with "actual notice" is clearly incorrect. *See General Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir.1991) (stating that "statute of limitations begins to run, when [plaintiff] has actual *or constructive* notice of its claims").

9. Elizabeth Rice, the director of consumer promotions for Reebok, identifies 52 articles from major media sources across the country discussing the Pump line of shoes. (Rice Decl. ¶¶ 1–22, 25–26.) These articles all appeared from September through December 1989. (*Id.*) Rice also identifies two national advertisements for the Pump shoes, appearing in *Sports Illustrated* and *USA Today,* which were published between November and December 1989. (*Id.*)

10. Justin Trembath, a certified information systems auditor for Reebok, indicates that 150 stores in New York were stocked with Pump shoes, beginning in November 1989. (Trembath Decl. ¶ 5.)

In some cases, the conduct of a defendant will toll the statute of limitations under the doctrine of fraudulent concealment. The doctrine is properly invoked only if a plaintiff establishes "affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987) (quoting *Gibson v. United States*, 781 F.2d 1334, 1345 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987)). Additionally, plaintiff "must demonstrate that [it] had neither actual nor constructive notice of the facts constituting [its] claims for relief." *Id.*

■ Here, plaintiff merely states that it has "affirmatively alleged that defendant fraudulently and intentionally entered into efforts to conceal [its] activities from plaintiff which would have advised plaintiff and put plaintiff on notice of defendant's conversion of plaintiff's trade secrets." (Opp'n at 16.) In an oversight that is fatal to its argument, plaintiff has cited no evidence whatsoever of affirmative conduct on the part of defendant. As "[b]ald allegations of conspiracy and concealment are not sufficient to make out a case of fraudulent concealment" so as to toll the statute of limitations, *King & King Enters. v. Champlin Petroleum Co.*, 446 F.Supp. 906, 911 (E.D.Okla.1978); *see also Volk*, 816 F.2d at 1415–16 (stating that plaintiff must plead facts with particularity), plaintiff's argument is ultimately futile. Additionally, based on the discussion above, plaintiff would be unable to demonstrate that it had neither actual nor constructive notice of the facts giving rise to its claim, which is a requisite element of the asserted theory. Lastly, plaintiff has not even attempted to show, nor does it appear that plaintiff could show, that it exercised due diligence to discover the facts supporting its claims, as this tolling doctrine clearly requires.

Based on the evidence submitted by Reebok on this issue, no reasonable jury could return a verdict at trial in favor of plaintiff.

Thus, for the foregoing reasons, defendant's motion for summary judgment on plaintiff's first, second, fourth, and fifth causes of action is hereby GRANTED on the separate and alternative ground of the bar imposed by the statutes of limitation.[11]

### b. THIRD CLAIM

The statute of limitations for plaintiff's unfair competition claim is set forth in California Business & Professions Code section 17208. This section provides that "[a]ny action to enforce any cause of action [for unfair competition] shall be commenced within four years after the cause of action accrued." Cal.Bus. & Prof.Code § 17208 (West 1987).

■ Significantly, the "discovery rule" applicable to the claims discussed above is inapplicable on this count; thus, the statute begins to run when cause of action accrues, irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine. *See Rosack v. Volvo of Am. Corp.*, 131 Cal.App.3d 741, 751, 182 Cal.Rptr. 800 (1982) (stating that cases interpreting federal Sherman and Clayton Acts are applicable to California's Cartwright Act), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983); *Pennsylvania v. Lake Asphalt & Petroleum Co.*, 610 F.Supp. 885, 890 (M.D.Pa.1985) (holding that statute of limitations for antitrust claim begins to run at time of accrual, notwithstanding plaintiff's ignorance of facts giving rise to claim); *Dayco Corp. v. Firestone Tire & Rubber Co.*, 386 F.Supp. 546, 549 (N.D.Ohio 1974) (finding that plaintiff's ignorance of claim was insufficient to overcome limitations defense), *aff'd*, 523 F.2d 389 (6th Cir.1975).

■ Here, plaintiff has consistently maintained that defendant Reebok misappropriated and began application and use of plaintiff's secret on or about May 1986. (First Am.Compl. ¶¶ 20, 38.) Since this act clearly would have injured plaintiff's business, plaintiff's cause of action would have accrued at that time. Additionally, based on plaintiff's allegations Reebok's alleged wrong (misap-

11. Defendant also contends that the statutes in issue were not tolled upon the filing of the complaint since, at that time, plaintiff was not authorized to do business in California. Based on the analysis herein, the Court need not reach this issue.

propriation of the air bladder) was a single, irrevocable wrong as opposed to a series of multiple wrongs. Thus, the period of limitations on this claim would have run in May 1990. As plaintiff's complaint was filed on February 10, 1993, it appears that the limitations period expired almost three years earlier. As discussed above, plaintiff's invocation of equitable tolling based on fraudulent concealment offers no comfort.

Based on the evidence submitted by Reebok on this issue, no reasonable jury could return a verdict at trial in favor of plaintiff. Thus, for the foregoing reasons, summary judgment must be GRANTED in favor of defendant on plaintiff's third claim for relief on the separate and alternative ground afforded by the statute of limitations.

## D. PATENT INFRINGEMENT CLAIMS

Defendant also moves for summary judgment on plaintiff's claim for patent infringement.[12] As a preview, it appears to the Court that plaintiff's infringement claim is capably summarized by one of its own consultants, who in comparing Reebok's shoes to the patent stated that "[a]lthough it is true that both use an inflatable bladder (so does an auto tire) that is where the functional similarity ends."

The law is well established that determining whether patent claims have been infringed requires a two-step analysis. *Markman*, 52 F.3d at 976; *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993). In the first step, the patent claims are construed to determine their scope and meaning; this step is a question of law for the court. *Markman*, 52 F.3d at 976, 979; *Carroll Touch*, 15 F.3d at 1576–77. In the second step, the patent claims, as properly construed, are compared to the accused device or process. *Markman*, 52 F.3d at 976; *Carroll Touch*, 15 F.3d at 1576. "A claim covers an accused device if the device embodies *every limitation* of the claim, either literally or by an equivalent." *Id.* (emphasis added); *see also Johnston*, 885 F.2d at 1577 & n. 3; *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed.Cir.1989) (same). The burden is on the patent owner to prove infringement by a preponderance of the evidence. *Carroll Touch*, 15 F.3d at 1578.

Until shortly before the hearing on defendant's motions, plaintiff had failed to even identify which claims of the '099 Patent were allegedly infringed by defendant's products and which of the shoes within defendant's Pump line were believed to be infringing. It is now clear, however, that plaintiff contends that only two of the '099 Patent's independent claims (12 [13] and 18 [14]) are infringed by

---

12. For present purposes only, Reebok assumes that the disclosed invention was patentable.

13. In Claim 12, the inventor claimed:
A shoe having a sole characterized by a first or forefoot region of relatively low compliant yieldability, a second or heel region of relatively great compliant yieldability, and a transitional intermediate region between said first and second regions; said heel region comprising a single pocket defined (1) by flexible upper and lower panels extending for substantially the rear half of the sole and (2) by peripheral sidewalls including an internal wall at juncture with said intermediate region, a single inflatable bladder retained within said pocket and peripherally conforming generally to adjacent surfaces of said walls and panels, said bladder having an inflation device including a check valve projecting for external access through one of said sidewalls, said inflation device being the only means of pressurizing-gas delivery to and retention within said bladder; said forefoot region comprising stiffly flexible and relatively void-free material; and said intermediate

region comprising a distributed cluster of sealed pockets.
('099 Patent, col. 8, lines 32–50.)

14. Claim 18 claims:
A shoe having a sole characterized by a first or forefoot region of relatively low compliant yieldability, a second or heel region of relatively great compliant yieldability, and a transitional intermediate region between said first and second regions; said heel region comprising a single pocket defined (1) by flexible upper and lower panels extending for substantially the rear half of the sole and (2) by peripheral sidewalls including an internal wall at juncture with said intermediate region, a single inflatable bladder retained within said pocket and peripherally conforming generally to adjacent surfaces of said walls and panels, said bladder having an inflation device including a check valve projecting for external access through on of said sidewalls, said inflation device being the only means of pressurizing-gas delivery to and retention within said bladder; said fore-

two of defendant's products (the "Dual Chamber"[15] shoe and the "Adjustable Footbed Chamber"[16] shoe). (*See* Reagin Decl. ¶ 3.)

### 1. LITERAL INFRINGEMENT

As defendant has identified several limitations in Claims 12 and 18 that are absent in the accused products, summary judgment is mandated.[17]

It is clear that both Claims 12 and 18 require a single air bladder contained in a single pocket in the heel region of the shoe, defined by flexible upper and lower panels and peripheral sidewalls. ('099 Patent, col. 8, lines 36–42; col. 10, lines 1–7.) The bladder is retained within this pocket and is required to conform to these sidewalls and upper and lower panels. (*Id.*, col. 8, lines 41–43; col. 10, lines 6–8.) This pocket is further described as "a single large upwardly open pocket[,] ... defined by a thin bottom panel, ... by sidewalls ... rising therefrom, ... and by the general central internal wall." (*Id.*, col. 3, lines 27–30.)

The most cursory examination of the accused product reveals that this large, upwardly opening bladder-containing pocket, as further limited by the language of the patent, is absent. The Reebok product employs a bladder that overlays the otherwise conventional sole structure. This bladder appears glued, on its underside, to the sole and, on its topside, to a thin piece of foam. The bladder is thus not even "in" the heel as required by the '099 Patent. (*See id.*, col. 3, lines 27–29; figs. 8–9.) Additionally, there is no "upwardly opening" pocket in the shoe, the bladder is not retained by any "peripheral sidewalls" to

which the bladder conforms, and there is no "internal wall" at the juncture of the pocket and the intermediate region of the sole. (In fact, the accused shoe does not appear to disclose anything that would even define, as in the patent, an "intermediate region" of the sole.)

Reagin, plaintiff's expert, argues that the "glue lines" in the Reebok shoe, which retain the air bladder between sole and the thin layer of foam, constitute side and inner walls and thus define a pocket. (Reagin Decl. ¶¶ 27–28.) These glue lines, while retaining Reebok's air bladder, simply do not define a pocket in the manner dictated by the clear language of the '099 Patent. Additionally, the "glued junction," which is really just the terminus of Reebok's bladder is, again, simply not a "wall" as required by the clear language of the patent.

Thus, as the limitations defining the bladder-receiving pocket as set forth in the '099 Patent are absent from Reebok's device, summary judgment is hereby GRANTED in favor of Reebok on the issue of non-infringement of the patent.

It is also clear from the language of the patent that the sole of the shoe must be characterized by three definable regions: the first or forefoot region of relatively low compliant yieldability (that is, stiff), the second or heel region of relatively great compliant yieldability (that is, mushy), and the third a transitional intermediate region between the forefoot and heel comprising a distributed cluster of sealed pockets. ('099 Patent, col. 8, lines 32–50; col. 9, lines 16–19 to col. 10 lines 1–18; fig. 2.) These cluster pockets are further defined as "a cluster of upwardly open generally rectangular pockets ... of

foot region comprising stiffly flexible and relatively void-free material; and said intermediate region being characterized by a distributed plurality of sealed pockets providing transitional compliant action between the first or forefoot region and the second or heel region. ('099 Patent, col. 9, lines 16–19 to col. 10, lines 1–18.)

15. See Exhibit 3, at page 48 of defendant's motion, for a reproduction of this model. Reebok has also lodged "Exemplar A," which is a Pump shoe having the same structure as the Dual Chamber shoe examined by plaintiff's expert Reagin.

16. See Exhibit 3, at page 47 of defendant's motion, for a reproduction of this model. The two models in issue are sufficiently similar so that the discussion herein is equally applicable to each.

17. As any dependent claim is, by definition, narrower than the independent claim upon which it depends, *see* 35 U.S.C. § 112, a dependent claim cannot be infringed if the claim upon which it depends is not infringed, *see London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed.Cir. 1991). Thus, if Claims 12 and 18 of the '099 Patent are found not to be infringed, no claims dependent thereon can be infringed.

progressively increasing vertical extent." (*Id.*, col. 3, lines 24–27.)

Again, the most cursory examination of the Reebok shoe's sole reveals that it is comprised of a single region; that is, a uniform foam midsole extends the entire length of the shoe. Moreover, a cluster of sealed, upwardly open, generally rectangular pockets—or a cluster of *any* pockets—is conspicuously absent.

Reagin, plaintiff's expert, again unsuccessfully attempts to find these structures in the accused shoe. He states that, when examined under a microscope, the foam used in Reebok's shoe reveals closed cells. (Reagin Decl. ¶ 24.) He then somehow equates these tiny foam cells (bubbles in the foam, really) with the upwardly open, rectangular pockets of progressively increasing vertical extent as taught by the patent. (*Id.* ¶¶ 24, 32.) It suffices to say that these bubbles are simply not the exact limitations disclosed by the patent. Reagin also argues that the three areas of varying compliant yieldability can be found in the accused shoe if one considers the hard rubber outsole of the Reebok shoe. (*Id.*) This analysis is preposterous in light of the description and limitations in the patent.

Thus, as the limitations defining the three regions of varying compliant yieldability as well as the cluster/plurality of rectangular pockets as set forth in the '099 Patent are absent from Reebok's device, summary judgment must be GRANTED in favor of Reebok on the issue of non-infringement of the patent on these separate and alternative grounds.

Finally, the claims cited by plaintiff require "an inflation device including a check valve projecting for external access through one of" the pocket sidewalls. ('099 Patent, col. 8, lines 44–45; col. 10, lines 9–10.) Even if, for the sake of argument, a pocket with sidewalls as described in the patent could be identified in the accused shoe, an examination of the shoe reveals that there is no inflation device for external access projecting through one of these sidewalls.

Reagin again fails to identify this limitation in the Reebok shoe. After arguing, contrary to the plain language of the patent, that the '099 Patent does not require the valve to extend through the sidewall, Reagin concedes that if the language of the patent is so construed, then the Reebok shoe does not literally infringe. (*See* Reagin Decl. ¶ 31.)

Thus, as the limitations defining an inflation valve that projects through an internal sidewall as set forth in the '099 Patent are absent from Reebok's device, summary judgment must be GRANTED in favor of Reebok on the issue of non-infringement of the patent on these separate and alternative grounds.

As the absence of a single material limitation in the '099 Patent from the accused products would compel entry of summary judgment for defendant, and as there appear to be at least three categories (pocket, clusters, and valve) of multiple limitations required by the '099 Patent that are absent from the Reebok products, summary judgment in favor of the accused infringer on plaintiff's claim of literal infringement is clearly the appropriate remedy.

## 2. DOCTRINE OF EQUIVALENTS

 Notwithstanding the absence of literal infringement, infringement may be found under the doctrine of equivalents if the differences between the claimed and accused products are insubstantial, according to an objective standard. *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1517–18 (Fed.Cir.1995) (en banc). An insubstantial difference may be present when the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result. *Id.* at 1517–20 (discussing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)). Evidence of copying or of "designing around" the claimed subject matter is also relevant to infringement under this doctrine. *Id.* at 1520–21.

 The doctrine is equitable in nature and involves balancing the competing policies of, on one hand, requiring patent claims to be particular and distinct so that competitors can avoid infringement, and on the other hand, protecting patentees from competitors

who appropriate the essence of an invention while barely avoiding the literal language of the claim. *Id.* (citing *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 856–57 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2069, 104 L.Ed.2d 634 (1989)).

■ It must be stressed that "[a]pplication of the doctrine of equivalents is the exception, however, not the rule." *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed.Cir.1991). Overzealous application of the doctrine is problematic and must be avoided as, otherwise, "[c]ompetitors will never know whether their actions infringe a granted patent." *Id.; see also International Visual Corp. v. Crown Metal Mfg. Co.,* 991 F.2d 768, 773–74 (Fed.Cir.1993) (Lourie, J., concurring) (describing the doctrine as "much troubled" and counseling against its mechanical application).

■ Proceeding under the doctrine of equivalents "does not mean that one can ignore claim limitations." *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935 (Fed.Cir.1987), *cert. denied,* 485 U.S. 961, 1099, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 426, 703 (1988). Thus, a patent owner may not "'under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" *Id.* (quoting *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532–33 (Fed.Cir. 1987)). And, as with literal infringement, "'[i]t is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of ... the substantial equivalent [of every element] in the accused device.'" *Id.* (first omission in original) (internal quotation marks omitted) (quoting *Perkin–Elmer,* 822 F.2d at 1532–33).

■ Based on the features discussed above, *see supra* part III.D.1, it is clear from comparing the accused product with the subject matter disclosed in the '099 Patent that the Reebok shoes do, quite substantially, change the way in which the claimed invention is performed. That is, the use of an air bladder on top of the sole is a substantial change from a bladder within a pocket in the heel of the shoe; the use of a sole of uniform density is a substantial change from a sole with three regions of varying compliant yieldability; the absence of a plurality of rectangular clusters is a substantial change from a shoe containing such a feature; and the absence of a valve protruding through the sidewall is a substantial change from the use of such a valve. (Additionally, as defendant notes, Reebok's basic configuration has been contemplated in various patents dating back at least to 1895.[18])

To cite a specific example, defendant notes that plaintiff has not introduced evidence to show that the "glued junction" performs the same function (the first *Graver* factor) as the internal wall taught in the '099 Patent. Inner wall 32, shown clearly in figure 4 of the patent, provides "direct load-bearing support" for plate 39, thus assuring "against any 'mushy' feeling or action within" the heel region. ('099 Patent, col. 4, lines 44–48.) As plaintiff has failed to show, or even suggest, that the glued junction performs this same function, it simply cannot be considered to be equivalent to the inner wall.

Further plaintiff has not introduced any evidence that would suggest the defendant copied Stutz's patent or created the accused Pump shoes by designing around the claimed material.

Based at least on the foregoing, the Court FINDS that this is not a proper case for application of the equitable doctrine of equivalents, and that summary judgment must be GRANTED in favor of defendant on plaintiff's claim of equivalent infringement.

18. For example, Patent No. 545,705 to Macdonald, issued in September 1895, discloses an "air-tight" pneumatic cushioned sole or pad sandwiched between the shoe's sole and an overlaying "attaching flap." (Mot., Ex. ·2.) Patent No. 2,080,469 to Gilbert, issued in May 1937, discloses a "pneumatic or inflatable foot correc- tion appliance depending upon imprisoned air" that sits atop the shoe's sole. (*Id.,* Ex. 3.) Similarly, Patent No. 2,600,239 to Gilbert, issued in June 1952, discloses another "pneumatic insole," this one being "inflatable to a desired extent" through an "air valve." (*Id.,* Ex. 4.)

As it is clear that Reebok's accused shoes neither literally nor equivalently infringe Claims 12 and 18 of the '099 Patent, defendant's motion for summary judgment must be GRANTED in its entirety, and plaintiff's complaint for patent infringement must be dismissed.

### 3. ATTORNEYS' FEES

Finally, Reebok urges the Court to declare this case to be exceptional under 35 U.S.C. § 285, thus allowing defendant to recover its attorneys' fees.

 "The court in exceptional [patent] cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[I]n certain instances, a 'frivolous' case can be 'exceptional' for purposes of [§ 285]." *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed.Cir.1993). "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." *Id.* The party moving for attorneys' fees bears the burden of proving the exceptional nature of the case by clear and convincing evidence. *Carroll Touch*, 15 F.3d at 1584.

In sum, Reebok argues that this is an exceptional case because plaintiff was manifestly unreasonable in assessing infringement. Although the Court is inclined to agree with Reebok that plaintiff's, and plaintiff counsel's, performance was less than sterling here, the Court cannot take the further step and state that this suit was baseless to a clear and convincing standard. Although it was disclosed late in the game, the Reagin declaration presented a good faith, albeit erroneous, theory of infringement. Further, the Court is not inclined to find a case exceptional based on the simple bumbling about of counsel; although such behavior makes the case more difficult to all concerned, it does not indicate clearly and convincingly that the action was wholly without merit.

Reebok's motion under 35 U.S.C. § 285 is therefore DENIED.

### V. CONCLUSION

As summary judgment must be entered in favor of defendant on both of plaintiff's complaints, this action must be, and hereby is, DISMISSED. Judgment must therefore be ENTERED accordingly. Defendant's request for fees, however, is hereby DENIED.

**SO ORDERED.**