[No. A088453. First Dist., Div. Four. Aug. 4, 2000.]

GLUE-FOLD, INC., Plaintiff and Appellant, v.
SLAUTTERBACK CORPORATION et al., Defendants and Respondents.

## COUNSEL

Law Offices of Bruce A. Lieberman and Bruce A. Lieberman for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, James J. Elacqua and Jeannine Y. Sano for Defendants and Respondents.

## OPINION

**POCHÉ, Acting P. J.**—The only issues presented on this appeal from a summary judgment concern whether three different statutes of limitation have run on what are essentially three causes of action for the same wrong—misappropriation of a trade secret. The primary issue—and one of first impression for a California court—concerns the construction of the limitation period provided by the Uniform Trade Secrets Act (Uniform Act) which California has adopted (Civ. Code, §§ 3426-3426.11).[1] We conclude that the actual discovery of an act of misappropriating a trade secret commences the limitation period of three years, which is not tolled by subsequent inactivity by the misappropriator. We further conclude that the limitation period is also not tolled if such inactivity is followed by what the Uniform Act calls a "continuing misappropriation."

With respect to the causes of action for breach of contract and violation of the Unfair Trade Practices Act (Bus. & Prof. Code, § 17000 et seq.), we conclude that the party opposing summary judgment failed to produce sufficient evidence to satisfy the "discovery" rule and thereby toll the running of the other statutes of limitation.

### BACKGROUND

The underlying scenario is easily described from uncontradicted evidence. Plaintiff Glue-Fold, Inc. (Glue-Fold) developed a new process for applying glue to paper products intended for mailing. Lacking the expertise to actually make the parts needed, Glue-Fold approached a number of possible collaborators, including defendant Slautterback Corporation (Slautterback). The specifics of Glue-Fold's new process were not revealed to Slautterback until the latter had in March of 1992 executed a "Non-Disclosure Agreement" which provided that each of the parties "agrees not to use Confidential Information for its own use or for any purpose except to evaluate whether such party desires to become engaged with the other Party in a business

---

[1]Unless otherwise noted, all further statutory references are to the Civil Code.

possibility. Each Party agrees not to disclose the other Party's Confidential Information to any third parties or to any of its employees except employees who are required to have the Confidential Information to evaluate the business possibility . . . ."[2] Slautterback then modified an existing piece of machinery to incorporate Glue-Fold's new process. The resulting product was titled a "buckle folder applicator." At some point described only as "the Fall of 1992," Slautterback officials requested "permission . . . to market" the new product. Glue-Fold's president "unequivocally and emphatically" refused.

Nevertheless, Slautterback almost immediately commenced actions that Glue-Fold viewed as misappropriation of its trade secret in the new process. The particulars are as follows:

In October-November of 1992 Slautterback sold a buckle folder applicator to a firm in Burbank. Additional dealings with that firm occurred in February of 1993. A buckle folder applicator was sold to a Minnesota firm in September of 1993. The buckle folder applicator figured prominently in a thousand brochures Slautterback circulated to its distributors in November of that year; the brochure was provided to potential customers until 1995. The applicator also appeared in Slautterback's product catalog beginning in 1993. Slautterback made three more sales of applicators in 1994. Also in 1994 Slautterback had discussions with two other manufacturers concerning buckle folder applicators. In August of 1995 Slautterback issued a press release announcing future demonstrations of its buckle folder applicator. In October of that year Slautterback demonstrated the applicator at a trade show and its marketing manager published an article describing the applicator in a trade publication.

October of 1995 was also the month that Glue-Fold protested to Slautterback about the latter's "direct violation of our Non-Disclosure Agreement," citing several publications and the sale to the Burbank firm. Slautterback disagreed, claiming that the process "was in the public domain prior to 1992." It did, however, discontinue its public advertising until June of 1996. Sporadic discussions through 1998 did not resolve the dispute; meanwhile Slautterback continued advertising the buckle folder applicator.

 On January 6, 1999, Glue-Fold filed a verified complaint against Slautterback in which the misappropriation supported causes of

---

[2]The agreement defined "Confidential Information" as "information, technical data, or know-how, including, but not limited to, research, products, software, services, development, inventions, ideas, processes, designs, drawings, engineering, marketing, or finances, disclosed either directly or indirectly in writing, orally or by drawings or inspection of parts or equipment. Confidential Information shall include, but not be limited to, all materials marked 'Confidential Information.' "

action for breach of contract (the nondisclosure agreement), violation of the Uniform Act, and unfair competition (Bus. & Prof. Code, § 17200).[3] The trial court granted Slautterback's motion for summary judgment, agreeing that each of Glue-Fold's causes of action was time-barred by a different statute of limitation. Glue-Fold perfected this timely appeal from the judgment entered on the trial court's determination.

REVIEW

I

The parties agree that Glue-Fold's cause of action for "Violation of Uniform Trade Secret Act" is governed by section 3426.6, which provides: "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim."

■ Section 3426.6 is derived from the Uniform Act, which was approved by the National Conference of Commissioners on Uniform State Laws in 1979 and adopted without significant change by California in 1984. (14 West's U. Laws Ann. (1990) U. Trade Secrets Act, p. 433; Stats. 1984, ch. 1724, § 1, pp. 6252-6253.)[4] Section 3426.6 is derived almost verbatim from section 6 of the Uniform Act as originally drafted. (See 14 West's U. Laws Ann., *supra*, U. Trade Secrets Act, com. to § 6, p. 462.) It is therefore appropriate to accord substantial weight to the commissioners' comment on

---

[3]Also named as a defendant by Glue-Fold was Nordson Corporation, which in September of 1992 had bought Slautterback and become its corporate parent. Nordson played no part in the dealings between Glue-Fold and Slautterback. In the interests of simplicity we therefore refer to Slautterback as the sole defendant.

Glue-Fold's complaint had a fourth cause of action seeking imposition of a constructive trust and an accounting. The former is not an independent cause of action but merely a type of remedy for some categories of underlying wrong. (See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 796, p. 252.) The latter is treated as a cause of action available to a wronged fiduciary (*id.* at §§ 775-777, pp. 233-235), which is subject to the statute of limitations governing the nature of the underlying wrong. (See *Estate of Peebles* (1972) 27 Cal.App.3d 163, 166 [103 Cal.Rptr. 560].) Because both of these equitable forms of remedies are dependent upon a substantive basis for liability, they have no separate viability if all of Glue-Fold's other causes of action are time-barred.

[4]The Legislative Counsel's digest for the enactment states: "Under existing law, no specific cause of action exists for misappropriation of a trade secret. [¶] This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions." (Legis. Counsel's Dig., Assem. Bill No. 501 (1983-1984 Reg. Sess.) 4 Stats. 1984, Summary Dig., p. 643.)

the construction of what is now section 3426.6. (E.g., *Plas v. Superior Court* (1984) 155 Cal.App.3d 1008, 1016 & fn. 7 [202 Cal.Rptr. 490]; *Smith v. Superior Court* (1977) 68 Cal.App.3d 457, 463 [137 Cal.Rptr. 348].)

That comment is: "There presently is a conflict of authority as to whether trade secret misappropriation is a continuing wrong. *Compare Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (CA9, 1969) (not a continuing wrong under California law—limitation period upon all recovery begins upon initial misappropriation) with *Underwater Storage, Inc. v. U.S. Rubber Co.*, 371 F.2d 950 (CADC, 1966), cert. den., 386 U.S. 911 [87 S.Ct. 859, 17 L.Ed.2d 784] (1967) (continuing wrong under general principles—limitation period with respect to a specific act of misappropriation begins at the time that the act of misappropriation occurs). [¶] This Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation. If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights." (14 West's U. Laws Ann., *supra*, U. Trade Secrets Act, com. to § 6, p. 462.)[5]

 Slautterback's position, which the trial court accepted, is elementary: Glue-Fold alleged in its complaint that "[i]n or about August, 1995," it "discovered that Slautterback had begun advertising the Buckle Folder Applicator for sale." Glue-Fold is bound by this admission. (E.g., *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 223 [31 Cal.Rptr.2d 525]; *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1623 [2 Cal.Rptr.2d 796].) Glue-Fold's complaint was filed in January of 1999, at least three years and four months after its admitted discovery of Slautterback's misappropriation. Glue-Fold's trade secret cause of action is therefore barred by the three-year period specified by section 3426.6.

In an attempt to avoid this conclusion, Glue-Fold advances a novel interpretation of the evidence and the statute. It sees itself as the victim of two distinct periods of misappropriation by Slautterback. The first extends up to October of 1995, when Glue-Fold protested to Slautterback. The second, during which Glue-Fold mistakenly believed that Slautterback would desist, began in mid-1996 when Slautterback resumed the public advertising it had halted in November of 1995. Looking to a dictionary

---

[5]The rule of statutory construction cited above is "particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission proposing the bill." (*Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].)

definition of "continuing" as "continuous, constant: needing no renewal: enduring" and the definition of "continuous" as "marked by uninterrupted extension in space, time, or sequence" (Webster's 9th New Collegiate Dict. (1984) p. 284), Glue-Fold argues that these circumstances show a "sufficient cessation or interruption" of Slautterback's misappropriation that "subsequent acts may give rise to a new statute of limitations period." In short, Glue-Fold contends that it was the victim of two discrete acts and periods of misappropriation, and because it commenced suit within three years of discovering the second period, which was a "continuing" misappropriation, the first is of no consequence.

There are numerous difficulties with this construction. One is that by basing its approach on dictionary definitions of "continuing" and "continuous" Glue-Fold pays insufficient attention to other statutory language, specifically, the central concept of "misappropriation." ■ That term is defined by the Uniform Act as acquisition of a trade secret *or* disclosure of a trade secret *or* use of a trade secret. (§ 3426.1, subd. (b)(1) & (2).) Any one of these methods of betraying confidence may constitute the misappropriation that actual or constructive discovery of which will start the clock. The limitation period is not triggered solely by what the statute terms "a continuing misappropriation." Unlike Glue-Fold's approach, proper statutory construction must consider and give meaning to all parts of the enactment at issue. (E.g., *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

■ Glue-Fold's construction also sidesteps the fact that section 3426.6 expressly uses the discovery of a misappropriation as commencing the limitation period: "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." As previously mentioned, Glue-Fold alleged that it "discovered" Slautterback's misappropriation in October of 1995, yet Glue-Fold now appears to say that this discovery was not the discovery intended by section 3426.6. Glue-Fold does not specify what different form of discovery would satisfy section 3426.6, or why its second discovery of Slautterback's misappropriation (i.e., the resumption of public advertising in 1996) is qualitatively different from the first. A statute is not taffy that can be pulled whichever way suits a litigant in a particular controversy. Statutory language must be construed according to the usual and ordinary meaning of the terms used. (E.g., *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; *Young v. Haines* (1986) 41 Cal.3d 883, 897 [226 Cal.Rptr. 547, 718 P.2d 909].)

Another provision of the Uniform Act specifies that it is to be construed to effectuate its goal of securing uniformity in application. (§ 3426.8.) The unanimous conclusion of courts considering the issue—i.e., from federal courts construing section 3426.6—is that it is the first discovered (or discoverable) misappropriation of a trade secret which commences the limitation period. (See *Ashton-Tate Corp. v. Ross* (9th Cir. 1990) 916 F.2d 516, 523 ["initial misappropriation" of disclosure occurred in February 1985 and was discovered one month later; argument that limitation period commenced upon discovery of 1998 use misappropriation and thereby made timely complaint filed in August 1988 called "unpersuasive"]; *Stutz Motor Car of America v. Reebok Intern., Ltd.* (C.D.Cal. 1995) 909 F.Supp. 1353 [suit filed in 1993 barred because plaintiff knew of misappropriation in 1989]; *Intermedics, Inc. v. Ventritex, Inc.* (N.D.Cal. 1993) 822 F.Supp. 634, 652, 653 (*Intermedics*) ["the court's central concern when analyzing statute of limitations questions with respect to alleged misappropriations of trade secrets is with identifying the point at which the *first* apparent breach of the confidential relationship occurred," "since what trade secret law protects . . . is . . . a right to maintain the integrity of a confidential relationship, it is the *first* known (or reasonably discoverable) breach of that relationship that creates the right to sue and thus triggers the running of the statute of limitations" (italics added)]; *Intermedics, Inc. v. Ventritex, Inc.* (N.D.Cal. 1992) 804 F.Supp. 35, 44 ["California law requires plaintiff to bring an action within three years after plaintiff discovered or should have discovered defendants' *initial* misappropriation . . . (regardless of whether the initial misappropriation is characterized as a use of the trade secret or merely as a disclosure of it)" (italics added)]; see also *Security People, Inc. v. Medeco Security Locks* (N.D.Cal. 1999) 59 F.Supp.2d 1040 [accepting *Intermedics* reasoning for purposes of res judicata analysis].) This is also the construction which the Uniform Act has received in other jurisdictions. (E.g., *McCaffree Financial Corp. v. Nunnink* (1993) 18 Kan.App.2d 40 [847 P.2d 1321]; *McLeod v. Northwest Alloys, Inc.* (1998) 90 Wn.App. 30 [969 P.2d 1066]; *Sokol Crystal Products v. DSC Communications* (7th Cir. 1994) 15 F.3d 1427 [applying Wis. U. Trade Secrets Act]; Trade Secrets Practice in California (Cont.Ed.Bar. 2d ed. 1999) § 11.13, pp. 327-329.) Glue-Fold presents no substantial justification for diverging from the unanimous body of opinion.

There are also substantial practical difficulties with Glue-Fold's construction of section 3426.6. Without question, trade secret misappropriation is ordinarily covert and hard for the betrayed party to discover. This was recognized before (*April Enterprises, Inc. v KTTV* (1983) 147 Cal.App.3d 805, 832, fn. 15 [195 Cal.Rptr. 421]) and after passage of the Uniform Act (*Sokol Crystal Products v. DSC Communications, supra,* 15 F.3d 1427, 1430; *Intermedics, Inc. v. Ventritex, Inc.* (N.D.Cal. 1991) 775 F.Supp. 1258,

1266-1267). There is an air of unreality about Glue-Fold's implicit claim that it was entitled to relax once Slautterback had halted its advertising campaign in November of that year. We agree with the federal court which stated that "California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets." (*Intermedics, supra*, 822 F.Supp. 634, 654.)[6] Glue-Fold had its first clue concerning Slautterback's unreliability when the latter requested permission to market the buckle folder applicator in the fall of 1992. That, together with the discovery in August of 1995 that Slautterback had previously sold an applicator to the Burbank firm, constituted actual notice (§§ 18-19) of Slautterback's misappropriation. Glue-Fold had expressly told Slautterback that the sale "has caused us untold sales losses." Having suffered appreciable harm from Slautterback's wrong, Glue-Fold's cause of action was complete at that time. (E.g., *Romano v. Rockwell Internat., Inc., supra*, 14 Cal.4th 479, 487.) Glue-Fold does not deny that a cause of action accrued in August of 1995. What occurred thereafter is not, as Glue-Fold calls it, "a separate claim," but an integral part of what section 3426.6 deems "a single claim." (E.g., *Ashton-Tate Corp. v. Ross, supra*, 916 F.2d 516, 524; *Intermedics, supra*, 822 F.Supp. 634, 643; cf. *Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp.* (9th Cir. 1969) 407 F.2d 288, 292-293 ["The cause of action arises but once" and is "fully matured at the moment . . . [of] first adverse use or disclosure"].) If Glue-Fold is allowed to escape the bar of section 3426.6 by focusing only on the subsequent "continuing" activity as "a separate claim" that "give[s] rise to a new statute of limitations period," the statute would not only contravene

---

[6]The full context of this quotation emphasizes the soundness of the court's reasoning. "By simultaneously rejecting the continuing wrong theory and insisting on 'discovery' as the trigger for the statute, the legislature seems to have decided to focus on plaintiff's interest in having real notice that conduct by defendant jeopardized the secrecy of *all* the confidences that plaintiff had shared with that defendant. The underlying principle appears to be that once plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should understand that there is a risk that that defendant will commit additional acts of misappropriation, whether they involve repeated misappropriations of one trade secret or initial misappropriations of other confidences. [¶] In other words, we think it fair to infer that California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets. This makes sense if, as is the case in California, the law's primary concern is to protect against breaches in or to restore the integrity of confidential relationships. Primacy of that concern suggests a fear that any break in the underlying integrity of a particular relationship puts at risk all the confidences that were shared during that relationship. A law based on these concerns would impose on plaintiffs a responsibility to take prompt and assertive corrective action with respect to all of plaintiffs' interests whenever plaintiffs detect a fracture in a once confidential relationship." (*Intermedics, supra*, 822 F.Supp. 634, 653, fn. omitted.)

the principle against splitting a cause of action (e.g., 4 Witkin, Cal. Procedure, *supra*, Pleading, § 35, pp. 95-96), it would also condone the continuing wrong approach which the drafters of the Uniform Act expressly repudiated. (See *Intermedics*, *supra*, at pp. 643 ["Section 3426.6 expressly rejects the continuing tort theory"], 651 [California "has squarely rejected the theory that misappropriation of trade secrets is a species of 'continuing wrong.' "].)

■ Statutory language must be read in light of the consequences produced by a particular construction, and with the aim of promoting, not defeating, the statute's purpose. (E.g., *Escobedo v. Estate of Snider* (1997) 14 Cal.4th 1214, 1223 [60 Cal.Rptr.2d 722, 930 P.2d 979]; *Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 686 [67 Cal.Rptr.2d 323].)

■ Our Supreme Court recently stated that in the absence of "a compelling reason for doing otherwise," a statute of limitation is to be construed in accordance with its plain language. (*Samuels v. Mix* (1999) 22 Cal.4th 1, 7 [91 Cal.Rptr.2d 273, 989 P.2d 701].) Glue-Fold's construction of section 3426.6 would radically diminish the concepts of misappropriation and discovery as used in the Uniform Act. ■ We therefore reject Glue-Fold's theory that acts which are more than a single act of misappropriation and yet are not sufficiently "regular and uninterrupted" to amount to a continuing misappropriation, do not commence the limitation period specified by section 3426.6.

The undisputed evidence shows that in August of 1995 Glue-Fold had actual notice of the misappropriation of its trade secret by Slautterback. Glue-Fold's cause of action for that wrong, initiated in January of 1999, more than three years later, was therefore barred by section 3426.6. Because this conclusion was established as a matter of law, the trial court correctly granted summary judgment. (E.g., *Romano v. Rockwell Internat., Inc., supra,* 14 Cal.4th 479, 487.)

## II

The parties agree that Glue-Fold's cause of action for breach of contract is governed by Code of Civil Procedure section 337, which establishes that "An action upon any contract" must be brought within four years. They further agree that Glue-Fold's cause of action for "Violation of Business and Professions Code Section 17200" is governed by section 17208 of that code, which provides in pertinent part: "Any action to enforce any cause of action

pursuant to this chapter shall be commenced within four years after the cause of action accrued. . . ."[7]

■ A limitation period does not begin until a cause of action accrues, i.e., all essential elements are present and a claim becomes legally actionable. (E.g., Code Civ. Proc., § 312; *Romano v. Rockwell Internat., Inc., supra,* 14 Cal.4th 479, 487; *Angeles Chemical Co. v. Spencer & Jones* (1996) 44 Cal.App.4th 112, 120 [51 Cal.Rptr.2d 594].) Developed to mitigate the harsh results produced by strict definitions of accrual, the common law discovery rule postpones accrual until a plaintiff discovers or has reason to discover the cause of action. (E.g., *Samuels v. Mix, supra,* 22 Cal.4th 1, 9; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79].) Now well entrenched, the discovery rule is widely applied. (See *Evans v. Eckelman* (1990) 216 Cal.App.3d 1609, 1613 [265 Cal.Rptr. 605]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 463, pp. 583-584.)

As evidenced by the parties' briefs, appreciating the scope and application of the delayed discovery rule can be difficult. Glue-Fold and Slautterback vigorously dispute whether the rule can be applied to the remaining causes of action. Glue-Fold points to decisions beginning with *April Enterprises, Inc. v. KTTV, supra,* 147 Cal.App.3d 805, holding that the discovery rule does apply to causes of action for breach of contract. Slautterback points to decisions appearing to require concealment or misrepresentation by the defendant (see *Matsumoto v. Republic Ins. Co.* (9th Cir. 1986) 792 F.2d 869, 872 and decisions cited) and insists neither of those factors is present here. Glue-Fold responds with decisions making no mention of those factors. (E.g., *Angeles Chemical Co. v. Spencer & Jones, supra,* 44 Cal.App.4th 112, 119-121; *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 919-923 [259 Cal.Rptr. 117].) Neither party mentions decisions between fiduciaries or instances where the damage or harm suffered is difficult to detect or beyond the plaintiff's comprehension. (See *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1246 [78 Cal.Rptr.2d 566] and decisions cited.) Slautterback can rely upon a single decision from a federal district court apparently holding that the discovery rule does not apply to claims barred by Business and Professions Code section 17208. (*Stutz Motor Car of America v. Reebok Intern., Ltd., supra,* 909 F.Supp. 1353.)[8] Glue-Fold insists that the logic of applying the rule to the cause of action for breach should extend to its last claim.

---

[7]The Uniform Act as adopted in California provides that its protection does not displace other contractual or civil remedies. (§ 3426.7, subd. (b).) A leading treatise also recognizes that misappropriation of a trade secret can form the basis for many common law and statutory causes of action. (Trade Secrets Practice in California, *supra,* §§ 11.38-11.55, pp. 354-372.3.)

[8]We say "apparently" because the decision does not expressly mention the discovery rule but deals with the defendant's alleged fraudulent concealment of material facts as tolling the

This skirmishing illuminates a number of intriguing byways, but we have no need to explore them. ■ We will assume for purposes of argument that the discovery rule is applicable to Glue-Fold's causes of action. (See *April Enterprises, Inc. v. KTTV, supra*, 147 Cal.App.3d 805, 828 ["both causes of action arise out of the fiduciary relationship. When a joint venturer commits a breach of fiduciary duty, the act may often, as here, constitute a breach of contract as well. Given the policy reasons for applying the discovery rule to a fiduciary, it would be pointless to permit the former cause of action and bar the latter"]; *Intermedics, Inc. v. Ventritex, Inc., supra*, 775 F.Supp. 1258, 1266-1267 [discovery rule applied to causes of action for breach of contract and unfair competition].) One consequence of this assumption is that, because the rule is a nonstatutory exception to a limitation period, Glue-Fold has the burden of proof to bring itself within it. (*Samuels v. Mix, supra*, 22 Cal.4th 1, 10; *April Enterprises, Inc. v. KTTV, supra*, at p. 832.)

Glue-Fold's showing in opposition to the summary judgment motion was inadequate to carry that burden. The *only* evidence Glue-Fold produced was a declaration from its president, Dennis Albert. The *only* part of the declaration that is relevant to the discovery issue reads as follows: "I have read the declarations of Slautterback's employees . . . submitted in support of defendants' Motion for Summary Judgment . . . . So far as I understand those declarations, they seem to state that from . . . the Fall of 1992 through August of 1994, Slautterback had, behind my back and without my knowledge, sent out materials incorporating Glue-Fold's trade secrets to its own distributors and had sold [some buckle folder applicators]; but, in August, 1995, Slautterback effectively 'went public' with its misappropriation of Glue-Fold's trade secrets by issuing [a] press release . . . ." This material does not disclose precisely how or when Glue-Fold learned of Slautterback's misappropriation. It may be inferred that this knowledge came from Slautterback's press release, but there are several other omissions where no answers are supplied. For example, although the press release makes no mention of any sales by Slautterback, Glue-Fold's October 1995 letter protests the applicator sale to the Burbank firm. How did Glue-Fold obtain knowledge of that sale? The source and timing are not provided, both of which would be useful in showing whether such information could have been obtained earlier (or, to put it in a way more helpful to Glue-Fold, whether the information could *not* have been obtained earlier). Mr. Albert does not show that

statute of limitation. (*Stutz Motor Car of America v. Reebok Intern., Ltd., supra*, 909 F.Supp. 1353, 1363-1364.) In light of our Supreme Court treating the fraudulent concealment principle as "[a] close cousin of the discovery rule" (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613]), it is reasonable to deem them equivalent. This appears to have been the approach of a federal district court considering the matter. (*Suh v. Yang* (N.D.Cal. 1997) 987 F.Supp. 783, 795 & fn. 8.)

Glue-Fold could not obtain the "materials" that Slautterback "sent out . . . to its own distributors." The Albert declaration does not show whether Glue-Fold ever directly asked if Slautterback was selling buckle folder applicators. In short, Glue-Fold did not show that it exercised reasonable diligence in investigating, or that earlier efforts would have been fruitless.

The summary judgment is affirmed.

Reardon, J., and Sepulveda, J., concurred.