**CALLAWAY GOLF COMPANY,**
**Plaintiff/Defendant–in–**
**Counterclaim,**

v.

**DUNLOP SLAZENGER GROUP AMERICAS, INC., d/b/a Maxfli, Defendant/Plaintiff–in–Counterclaim.**

No. CIV.A. 01–669–KAJ.

United States District Court,
D. Delaware.

May 18, 2004.

Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff and Counter–Defendant.

David J. Ferry, Jr., Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Defendant and Counter–Claimant.

## MEMORANDUM ORDER

JORDAN, District Judge.

### I. Introduction

Presently before me is a motion by Callaway Golf Company ("Callaway") for summary judgment against Dunlop Slazenger Group Americas, Inc. d/b/a Maxfli ("Dunlop"). (Docket Item ["D.I."] 307; the "Motion"). Specifically, Callaway seeks summary judgment on Count II (Misappropriation of Trade Secrets), Count III (Negligent Hiring, Training, Supervision and/or Retention of Employees; the "negligence" claim), Count V (Conversion), and Count VI (Unjust Enrichment) of Dunlop's Amended Counterclaim (D.I.293) on stat-

ute of limitations grounds. I have jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. For the reasons that follow, the Motion is denied.

### II. Background [1]

During the first half of 1997, Callaway hired four former Dunlop employees. (D.I. 308 at 3). On Februrary 17, 1997, Callaway hired Henry Felipe ("Felipe"), Dunlop's former Manufacturing Process Engineer. (*Id.*) On April 23, 1997, Callaway hired Mike Yagley ("Yagley"), Dunlop's former Senior Dimple Development Engineer. (*Id.*) On April 30, 1997, Callaway hired Gary Marshall ("Marshall"), Dunlop's former Project Manager for Development of Polyurethane Golf Balls, and on June 9, 1997, Callaway hired Pijush Dewanjee ("Dewanjee"), a former Dunlop polymer chemist. (*Id.*)

With the belief that Marshall was continuing to work with a vendor contact obtained while he was employed at Dunlop, Dunlop had its outside patent lawyer, Anthony M. Lorusso ("Lorusso"), write a letter to Callaway, dated June 24, 1997, stating that "any emergence in the marketplace of a polyurethane golf ball similar to the polyurethane golf ball developed by Dunlop would certainly be an act which would warrant litigation by Dunlop against Callaway." (D.I. 337 at 11; D.I. 308 at 4.) In that same letter, Lorusso also asked for written assurances that Callaway would not utilize Dunlop's proprietary information in the development of a polyurethane golf ball. (*Id.*) On July 14, 1997, the Associate General Counsel for Callaway, Michael Rider ("Rider"), responded to the letter, stating that Callaway could not "confirm that any information obtained by [Marshall] [wa]s 'proprietary' or otherwise qualifies as a trade

---

**1.** The following rendition of the background information for my decision is cast in the light most favorable to the nonmoving party, Dunlop, and does not constitute findings of fact.

secret," but assured Dunlop that it would not utilize Dunlop's proprietary information. (D.I. 309 at Ex. D.) In February 2000, Callaway introduced a three-piece solid golf ball with a polyurethane cover (the "RULE 35 golf ball") to the general market. (D.I. 308 at 5.)

Dunlop asserts that as of January 2001, it had no knowledge of any trade secret misappropriation by Callaway. (D.I. 337 at 14.) Dunlop alleges that it had "undertaken some inconclusive destructive testing of Callaway's RULE 35 golf ball in the prior year, but nothing suggested or revealed any misappropriation of Dunlop trade secrets by Callaway. (Id.) Dunlop also states that Dunlop was still investigating whether U.S. Patent No. 6,117,024, which was issued to Callaway, "relied on trade secret information that was proprietary to Dunlop [and] that Dewanjee had acquired while working at Dunlop." (Id. at 14–15.) According to Dunlop, "that investigation was underway and had not been fully completed ... when Callaway filed litigation against Dunlop." (Id. at 15.)

On October 3, 2001, Callaway filed the present lawsuit against Dunlop, alleging infringement of U.S. Patent No. 6,213,898 B1 (the " '898 patent"). (D.I.1.) On October 15, 2001, Dunlop answered Callaway's complaint and brought various counterclaims, including counterclaims for "Declaratory Judgment of Non–Infringement, Invalidity and Unenforceability" of Callaway's '898 patent and "Declaratory Judgment of Unenforceability of [the] '898 Patent Due to Inequitable Conduct Before the United States Patent and Trademark Office." (D.I.5.) Callaway and Dunlop agreed to dismiss the patent claim and counterclaims. (D.I.287.) Dunlop's remaining counterclaims are captioned as claims for misappropriation of trade secrets, negligent hiring, training, supervision and/or retention of employees, patent title, conversion, unjust enrichment, and false advertising under the Lanham Act. (D.I.293.)

As a defense to Dunop's counterclaims, Callaway claims that "the statute of limitations expired more than a year before [Dunlop] filed its Counterclaim in October 2001." (D.I. 308 at 8.)

## III. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." "[T]he availability of summary judgment turn[s] on whether a proper jury question ... [has been] presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making that determination, the Court is required to accept the non-moving parties' evidence and draw all inferences from the evidence in the non-moving parties' favor. *Id.* at 255, 106 S.Ct. 2505; *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Nevertheless, the party bearing the burden of persuasion in the litigation, must, in opposing a summary judgment motion, "identify those facts of record which would contradict the facts identified by the movant." *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.2002) (internal quotes omitted).

## IV. Discussion

The California Uniform Trade Secrets Act ("CUTSA") states that "an action for misappropriation must be brought within

three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ.Code § 3426.6. Callaway asserts that "there is no genuine dispute as to the material facts that establish that" Dunlop "first became aware of the initial alleged polyurethane trade secret misappropriation on June 24, 1997, at the latest," and that the statute of limitations therefore expired before Dunlop filed its Counterclaim against Callaway. (D.I. 308 at 8.) The facts, however, do not support that assertion.

The June 24, 1997 letter from Lorusso to Callaway in effect asks whether Marshall had "obtained proprietary information" and seeks assurances that Callaway would not use "that proprietary information in the development of a polyurethane golf ball." (D.I. 308 at Ex. A.) At most, this letter suggests that Dunlop was aware of the possibility that Callaway might misappropriate its trade secrets in the future, but it does not suggest, as Callaway asserts, that Dunlop discovered or should have discovered that Marshall misappropriated its trade secrets, and thus triggered the running of the statute of limitations. (D.I. 308 at 10) (citing *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal.4th 215, 127 Cal.Rptr.2d 169, 57 P.3d 647, 651 (2002); *Glue–Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1026, 98 Cal.Rptr.2d 661 (Cal.Ct.App.2000); *Intermedics, Inc. v. Ventritex, Inc.*, 804 F.Supp. 35, 44 (N.D.Cal.1992)). Moreover, Rider's reply letter, dated July 14, 1997, in which Callaway stated that if Callaway "ultimately develop[s] and introduce[s] a polyurethane golf ball, [it would] do so in a way that respects the patents and proprietary rights of others" (*Id.* at Ex. D) gave Dunlop the assurances it needed to refrain from litigation. As Callaway points out, Dunlop did not even respond to Rider's letter. (D.I. 308 at 5.)

Because Callaway's assertions are conclusory and unsupported by the evidence, Callaway has not met its burden that Dunlop's counterclaims are barred by the statute of limitations. *See Kaiser Found. Hosps. v. Workers' Comp. Appeals Bd.*, 39 Cal.3d 57, 216 Cal.Rptr. 115, 702 P.2d 197, 199 (1985) (the statute of limitations is an affirmative defense on which the defendant bears the burden of proof). Callaway's Motion will therefore be denied.

## V. Conclusion

Accordingly, IT IS HEREBY ORDERED that the Motion (D.I.307) is DENIED.