**HIREL CONNECTORS, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. CV0111069DSFVBKX.**

United States District Court, C.D. California.

Jan. 4, 2005.

---

Joel R. Bennett and William R. Nelson, Bennett & Fairshter, LLP, Pasadena, CA, Robert A. Brunette, Glendale, CA, For plaintiff HiRel Connectors, Inc.

Assistant U.S. Attorney Vince Farhat, Los Angeles, CA, For defendants United States of America and Donald H. Rumsfeld, in his official capacity as Secretary of Defense.

Kent B. Goss and Ian R. Barrett, Pillsbury Winthrop Shaw Pittman, Los Angeles, CA, For defendant Amphenol Corporation.

Jack Smart and Chuck McKenna, Vogt & Resnick, Newport Beach, CA, For defendants Deutsch Ltd. & Deutsch Company.

Joseph F. Coyne and Dan W. Park, Sheppard Mullin Richter & Hampton, Los Angeles, CA, For defendants Northrop Grumman Corporation & ITT Industries, Inc.

Thomas L. Taylor III and Asa Hammi, Morgan Lewis & Bockius, Los Angeles, CA, For defendant Sabritec.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS

FISCHER, District Judge.

### I. INTRODUCTION

By this Motion (one of seven filed concurrently), Defendants contend Plaintiff's misappropriation claims are barred by the statute of limitations.[1]

Defendants' Joint Notice of Motion and Motion for Summary Judgment Based on Statute of Limitations; Memorandum of Points and Authorities in Support Thereof; Declaration of Jack Smart with Exhibits in Support Thereof ("Smart Dec."); Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations ("SOUF"); (Proposed) Order Granting Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations, and [Pro-

---

1. Defendants seek dismissal of the entire lawsuit, not just the misappropriation claims. However, they do not address any limitations periods other than the three year period that applies to misappropriation claims.

posed] Judgment were filed on September 28, 2004.

The Notice of Errata Regarding Table of Contents and Table of Authorities as to Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations was filed on September 29, 2004.

Plaintiff HiRel Connectors' Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations ("Opp."), and Plaintiff's Genuine Issues of Material Fact Re: Statute of Limitations ("GI") were filed on October 29, 2004. The Notice of Errata Re: Plaintiff's Genuine Issues of Material Fact Re: Statute of Limitations was filed on November 9, 2004.

The Reply Brief in Support of Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations; Further Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations; Declaration of Jack Smart in Support of Reply Brief Re: Defendants' Joint Motion for Summary Judgment Based on Statute of Limitations ("Reply Dec."), and Objection to Notice of Errata Re: Plaintiff's Genuine Issues of Material Fact Re: Statute of Limitations were filed on November 12, 2004.

The Supplemental Compendium of Depositions Supporting Statement of Uncontroverted Facts and Conclusions of Law in Opposition to Defendants' Joint Motion for Summary Judgment on the Existence and Validity of Plaintiff's Purported Trade Secrets Contained within Military Specification MIL–DTL–83538/11 and Based on Statute of Limitations was filed on November 23, 2004.

## II.  UNCONTROVERTED FACTS

Plaintiff HiRel Connectors, Inc. ("Plaintiff" or "HiRel") is the manufacturer of the HiRel Connector, an aircraft missile rail launch assembly, which consists of three parts, one attaching to the aircraft (the "ASI"), another attaching to the missile (the "MSI"), and the buffer situated between the ASI and the MSI. SOUF # 1[2]; GI# 1.

Beginning in the 1980s, the United States Air Force identified the need for a new connector with greater capacity and speed than the HiRel Connector. SOUF # 2.

This new connector specification was designated as MIL–DTL–83538. SOUF # 3. The MIL–DTL–83538 specification includes a design for a supplemental buffer that connects the ASI of the MIL–DTL–83538 to the MSI of the HiRel Connector. GI # 4. This supplemental buffer design is found on a MIL–DTL–83538 revision sheet, the MIL–DTL–83538/11 ("Slash 11"). *Id.* The U.S. Defense Supply Center, Columbus ("DSCC"), an agency within the Department of Defense, drafted a specification sheet for the recommended Slash 11 transition buffer. *Id.* Plaintiff alleges that the portion of the Slash 11 buffer designed to mate with a HiRel MSI contains a portion of its trade secrets, which are alleged to have been misappropriated by the Defendants.[3] *Id.;* GI # 5.

On May 28, 1998, Abdonasser Abdouni, a civilian engineer with DSCC, distributed the draft of MIL–DTL–83538, including

---

**2.** Plaintiff often admits in its GI that a fact is "not disputed," but provides additional information. The Court considers the additional information irrelevant, except as noted, and deems the fact admitted.

**3.** Plaintiff contends that, prior to December 24, 1998, draft versions of the specification were insufficiently detailed to reverse engineer any portion of Plaintiff's trade secrets. GI # 5.

the Slash 11 Specification, to interested parties outside the Government, including companies in the connector industry, in order to solicit comments on the draft specification. SOUF # 6.[4]

On May 28, 1998, DSCC also posted the initial draft of the Slash 11 Specification on the DSCC website. SOUF # 7. The draft Slash 11 Specification sheet stated, at the bottom of page 1: "Approved for public release; distribution is unlimited." SOUF # 8.

On September 28, 1998, Mr. Abdouni and Robert M. Heber, Chief of the Interconnection Devices Team at DSCC, distributed a notice of a coordination meeting scheduled for November 3–5, 1998, in Columbus, Ohio to the parties that submitted written comments to the draft Slash 11 specification. SOUF # 13. Because Plaintiff did not submit written comments, it was not sent this notice. SOUF # 15. However, because Mr. Abdouni knew Plaintiff was interested in the MIL–DTL–83538, he went out of his way personally to telephone Plaintiff's employee, Rod Ordonez, to invite him to the coordination meeting. *Id.*

Rod Ordonez spoke with Brian Burns of the DSCC on September 29, 1998. Mr. Burns informed Mr. Ordonez of the coordination meeting, and they further discussed the availability of the Slash 11 Sheet. SOUF # 16. Later that same day, pursuant to Mr. Burns' specific request, Mr. Ordonez received an e-mail from Mr. Abdouni that attached a September 28, 1998 memorandum letter informing Plaintiff of the November 1998 coordination meeting. SOUF # 17. When Mr. Ordonez downloaded the coordination meeting notice on September 29, 1998, he also downloaded the May 28, 1998 notice and the draft Slash 11 specification sheets that accompanied it.[5] SOUF # 18.

## III. *LEGAL STANDARD*

### A. Summary Judgment Generally

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there remains a genuine issue for trial. *See id.;* Fed.R.Civ.P. 56(e). The dispute must be genuine. The "opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be

---

4. For the purposes of this motion the Court accepts Plaintiff's contention that it did not see the specification until September 1998. GI # 6.

5. As of September 1998 Plaintiff knew that a draft had been posted to the internet. *See* GI # 6. For the purposes of this motion, the result is the same whether Plaintiff first became aware of the draft in May or September.

resolved in favor of either party. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders the claim implausible. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *See Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989); *California Architectural Building Products., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

In granting summary judgment, a district court is not entitled to weigh the evidence and resolve disputed underlying factual issues. *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1161 (9th Cir.1992). Rather, the court is required to view all inferences to be drawn from "the underlying facts ... in the light most favorable to the party opposing the motion." *Id., quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

"[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Nor can an opposing party create a genuine issue by making an argument that flatly contradicts other positions it has taken in the litigation. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991) (opposing party generally cannot create a genuine issue by submitting declaration that flatly contradicts his prior deposition testimony).

## B. Statute of Limitations for a Misappropriation Claim

A claim for trade secret misappropriation under the California Uniform Trade Secrets Act (UTSA) must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. Cal. Civ.Code § 3426.6. A continuing misappropriation constitutes a single claim. *Id.*

Misappropriation means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent ....

Cal. Civ.Code § 3426.1(b).

■ When a plaintiff brings suit against an individual defendant for separate misappropriations of related trade secrets, or for multiple misappropriations of a single secret, the date of accrual is the date of the initial misappropriation. *See Cadence Design Sys., Inc. v. Avant! Corp.,* 29 Cal.4th 215, 218, 127 Cal.Rptr.2d 169, 57 P.3d 647 (2002) ("the continued improper use or disclosure of a trade secret after defendant's initial misappropriation is viewed under the UTSA as part of a single claim of 'continuing misappropriation' accruing at the time of the initial misappropriation"); *Glue–Fold, Inc. v. Slautterback Corp.,* 82 Cal.App.4th 1018, 1028 n. 6, 98 Cal.Rptr.2d 661 (2000) ("we think it fair to infer that California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets").

In situations involving multiple defendants, there may be multiple dates of accrual. *See Cadence,* 29 Cal.4th at 225, 127 Cal.Rptr.2d 169, 57 P.3d 647 (there may be separate claims of continuing misappropriation among different defendants, with differing dates of accrual and types of tortious conduct—some defendants liable for initial misappropriation of the trade secret, others only for later continuing use) (citation omitted).

## IV. *ANALYSIS*

### A. Federal Defendants

Plaintiff filed its original Complaint on December 21, 2001. Therefore, if its misappropriation claim accrued before December 21, 1998, its misappropriation claims against the Federal Defendants are time-barred. The determinative question is whether the posting of the draft of the Slash 11 specification in May 1998 by the Government (as discovered by Plaintiff in September 1998) constituted misappropriation of Plaintiff's trade secrets.

Plaintiff argues, as it must to avoid the limitations bar, that the draft Slash 11 specification did not contain its trade secrets. In support of this argument, Plaintiff asserts that the draft "had what amounted to a visual representation of the general appearance of the pin pattern, no more than could be seen with the naked eye. It purported to disclose various measurements and tolerances of this pattern, but those representations were grossly incorrect when compared to the actual manufacturing drawings for the HiRel part." Opp., 8:5–10. Plaintiff further declares that the disclosures in the draft did not enable anyone either to manufacture or produce the HiRel Connector, and notes that the drawing represented that

HiRel was the sole source for the HiRel Connector and maintained it as its proprietary property. Opp., 8:10–20.[6] In addition, Plaintiff contends that Ordonez was "made *fully aware* by the Government that its dimensions were not correct, and did not disclose any trade secrets," because Brian Burns told Ordonez that the Slash 11 "could *not be made final* unless HiRel gave the Government HiRel's drawings . . . which Plaintiff refused to do". Opp., 8:21–27. This contention is not supported by the testimony or document cited (GI # 73). Ordonez did not testify that anyone said the draft did not disclose any of HiRel's secrets (and one wonders why he would have relied on someone else's understanding of what were HiRel's trade secrets). In any event, in light of the fact that the draft clearly does contain information that Plaintiff had identified as part of its numerous trade secrets, Ordonez could not have relied on any such representation had it been made. Moreover, the allegation that the Government said it could not complete the specification "unless" HiRel released its drawings is also a contortion of Ordonez' testimony. To the extent the testimony can be understood at all, Ordonez testified that he was told the Slash 11 had not yet been released because HiRel had not released the specifications. Ordonez test. at 48:12–17; 52:20–23. Presumably, Burns referred to a final version of the Slash 11 as the draft containing some proprietary measurements was already in Ordonez' possession on the day this conversation allegedly occurred. *See* Ex. 87. Moreover, Burns apparently did not preclude efforts to obtain additional (allegedly proprietary) information by other means. Interestingly, Exhibit 87, relied on by Plaintiff, is dated February 27, 2003, near-

---

**6.** The Court can find no such representation on the document. While there are several references to HiRel, neither the words "proprietary" or "property" are used. Nothing in these references would have put an innocent party on notice that using this information would violate any of HiRel's rights.

ly four and a half years after the conversation took place and long after the original complaint was filed. It also fails to support Plaintiff's assertions of assurances by the Government.

The Court's analysis of Plaintiff's argument that the draft Slash 11 specification did not contain its trade secrets begins with an examination of Plaintiff's Revised Identification of Trade Secrets, filed under seal pursuant to Court Order dated April 19, 2004 ("Identification"). In the Identification, Plaintiff declared that the elements that it claims embody trade secret design include "the pattern in which the electrical pins/connectors are laid out, including the precise geometry, location, dimensions and manufacturing tolerances . . . ." Smart Reply Dec., Ex. 17 at 25:10–13. Plaintiff asserted in the Identification that "[t]he solutions to the foregoing problems are found throughout the design for the HiRel Connector, including all measurements, tolerances and strengths set forth in the drawings, all of which comprise portions of HiRel's Trade Secrets." *Id.* at 25:24–27. Additionally, language from Plaintiff's Sixth Amended Complaint describing its trade secrets establishes that Plaintiff claimed a trade secret in not only the complete design, but in each individual measurement: "[Plaintiff's] Trade Secrets . . . embody those elements, either individually or in combinations of 2 or more elements, found in HiRel's parts for military air-to-air missiles . . . . Those elements include: (i) the pattern in which the electrical pins/connectors are laid out, including the precise geometry, location, di-

mensions and manufacturing tolerances . . . ." Sixth Amended Compl., 7:5–15.

A comparison of the draft Slash 11 specification, attached to Plaintiff's First Amended Complaint at page 6 of Ex. N, to the final version of the Slash 11 specification[7], attached to Plaintiff's First Amended Complaint at page 4 of Exhibit P, reveals that, while there are differences, some of the pin locations were identified correctly (for example, the pins at 11.48, 6.86, and 6.83). Plaintiff's assertion that the draft was "grossly incorrect" does not suffice to avoid the statute of limitations. Plaintiff alleges in its Complaint that "24 of 30 pin locations were incorrect," conceding that 6 were correct. Sixth Amended Compl., 21:12.

Because (1) California trade secret law protects the confidential relationship between the parties, rather than a plaintiff's property interests, and (2) Plaintiff claims a trade secret in each measurement and pin location, as well as the pattern, Plaintiff's trade secrets were misappropriated, if at all, when one of the pin locations, or the pattern, was misappropriated for the first time. September 29, 1998, the date Plaintiff was put on notice of the May 28, 1998 posting, is therefore the latest date of accrual of Plaintiff's claim of misappropriation against the Federal Defendants. Plaintiff cannot "extend" the statute of limitations simply by asserting that it does not sue based on certain wrongful conduct occurring outside the limitations period. This tactic is similar to the "continuing violation" argument (with a differ-

---

7. Plaintiff has referred to the Slash 11 specification as an "accurate" portrayal of its measurements. *See* Opp., 6:5–9; *see also* Sixth Amended Compl., 21:13–22 ("[Defendants conspired to steal Plaintiff's trade secrets by] preparing to finalize and publish . . . a portion of [Plaintiff's] Trade Secrets, including the actual HiRel Connector 30–pin pattern design and precise geometric locational dimensions, sizes and manufacturing tolerances.") Therefore, though Plaintiff's identification of its trade secrets is less than clear, partial congruence between the draft and the final specification establishes that the draft contained some of its trade secrets.

ent twist) that was rejected by the California Supreme Court in *Cadence*.

Plaintiff's proffered reasons for concluding that December 24, 1998, rather than September 29, 1998, was the date of accrual do not raise a triable issue of material fact. Plaintiff argues that the draft did not provide sufficient information to enable anyone to reverse engineer the HiRel Connector. However, it is simply not the law that publication of a drawing depicting an alleged trade secret is only a misappropriation if the product can be successfully reverse engineered from the drawing. Plaintiff has not cited a single case even suggesting otherwise. Additionally, Plaintiff argues that the draft publication included a legend that designated the drawing as Plaintiff's property, and the final publication included no such legend.[8] (As indicated previously, this overstates the import of the language on the drawing.) Essentially, Plaintiff argues that the publication of a completely accurate representation of its trade secrets would not be a misappropriation if it contained a legend marking the drawing as Plaintiff's property. Again, it has not cited a single case holding that this is the law.[9] Finally, Plaintiff refers to representations allegedly made to Rod Ordonez by the Government in September 1998, that the specification could not be finalized unless Plaintiff agreed to provide some of its drawings to the Government. Even if the Government's statements could be interpreted in that manner, this argument assumes that the confidential relationship between Plaintiff and the Government had not been severed by the publication of the draft specification. As discussed above, it had been. Once the relationship was severed by even a largely flawed revelation of Plaintiff's alleged·secrets, it was unreasonable for Plaintiff to continue to trust the Government. *See Glue–Fold*, 82 Cal. App.4th at 1028 n. 6, 98 Cal.Rptr.2d 661.

Plaintiff's first claim for relief against all Defendants for declaratory relief, and its second claim for relief against the Federal Defendants only for mandamus and prohibition, are based entirely on Plaintiff's allegations of misappropriation. Accordingly, those claims are time-barred against the Federal Defendants. Its Sixth Claim for Relief against the Federal Defendants and Northrop Grumman for breach of written contracts accrued against the Federal Defendants when Plaintiff learned that the trade secrets were posted to the internet as to the contracts executed before that date.[10] The statute of limitations on the breach of contract claim is four years. Cal.Code Civ. Proc. § 337. That claim is timely.

## B. Private Defendants

Plaintiff argues that each of its claims must be analyzed separately for the purposes of the statute of limitations and urges this Court to "analyze [for each Defendant] when [Plaintiff] became aware of each Defendants [sic] role in the acts of misappropriation ...." Opp., 23:25–27. Further, it argues that "[the publication of the Slash 11 specification] did not put HiRel on notice of the complicity of the other

---

**8.** Plaintiff admits the draft Slash 11 Specification sheet stated, at the bottom of page 1: "Approved for public release; distribution is unlimited." SOUF # 8.

**9.** Moreover, Plaintiff essentially abandoned this argument at the November 22 hearing. When this Court asked "I want to know under the law if somebody has a trade secret and it's published to the world but it has 'by the way, this is HiRel's trade secret,' is that okay?" Plaintiff's counsel responded "No." Transcript of November 22, 2004 hearing ("Trans.") at 13:1–4.

**10.** Plaintiff's claims for breach of four contracts entered into in 2000 or later obviously are not time-barred.

Defendants [in the posting of the information]. Even if HiRel suspected that participants in the meeting had played a part, they could not be sure which ones were involved, or what they had done to lead to HiRel's injury [until a later date]." Opp., 24:4–8.

Plaintiff's argument assumes that its claim for relief against the other Defendants accrued when it had *actual* notice of their involvement. But under California law, an action for misappropriation must be brought within three years after the misappropriation is *discovered or by the exercise of reasonable diligence should have been discovered.* Cal. Civ.Code § 3426.6 (emphasis added). Therefore, the question is whether Plaintiff, by the exercise of reasonable diligence, should have discovered the involvement of the other Defendants before June 20, 1999, three years before it filed its First Amended Complaint, which named them as Defendants.

### 1. Amphenol, Deutsch Ltd. and the Deutsch Company

Plaintiff alleges that Amphenol and the Deutsch Defendants conspired with the Government to place an accurate depiction of Plaintiff's trade secrets on the internet, on December 24, 1998. *See, e.g.,* Sixth Amended Compl. at ¶¶ 65, 66, 67, 68, 70, 73, 78, 83, 84, 87.[11] If Plaintiff would have discovered their involvement through reasonably diligent efforts before June 20, 1999, the claims for relief against them that relate to their alleged participation in the misappropriation are time-barred.

**11.** Plaintiff also alleges that each of these Defendants is guilty of offering to sell products incorporating its trade secrets after the publication of those secrets on the internet— an allegation it does not make against the Government. As discussed below, this allegation seems to be independent of all allegations involving misappropriation, and therefore has a different date of accrual.

Defendants have presented evidence indicating that Plaintiff could have discovered the involvement of these Defendants with very limited efforts. For example, Plaintiff could have attended the November meeting, or, at the least, could have asked for documentation regarding how the final Slash 11 specification had been disclosed on the internet earlier than it asked for it, in February 2001. *See* Baumann Dec. at ¶ 149.

■ Though Plaintiff almost certainly could have discovered the participation of these Defendants with minimal efforts, it would be inappropriate to hold, at the summary judgment stage, that reasonable efforts would have led to the discovery of their involvement before June 20, 1999. The reasonableness of Plaintiff's efforts to discover the misappropriators (and what would have been discovered through reasonably diligent efforts) is a determination that must ultimately be made by the trier of fact.

### 2. Defendants Northrop and ITT[12]

Plaintiff contends that Defendants Northrop and ITT attempted to supply a connector assembly embodying portions of Plaintiff's trade secrets in or around 2001. *See* Sixth Amended Compl. at ¶¶ 104–123. Defendants argue that the trade secrets ceased to be secrets once they were published on the internet and that, therefore, no misappropriation could occur after that date. This argument is addressed in a separate motion.

**12.** Plaintiff alleges that each of the Defendants Northrop Grumman Corporation and ITT Industries, Inc. is legally liable and responsible for the actions of Tec Electrical Components Ltd., Veam SRL, Veam Elektro Anschlusstechnik GMBH, and ITT Veam LLC.

Though it seems likely from the allegations of the Sixth Amended Complaint that Plaintiff's claims are time-barred, the Court cannot yet rule on this issue because Defendants sought and obtained a stay of discovery as to misappropriation. *See* March 8, 2004 Order.

### 3. Defendant Sabritec

The allegations of misappropriation against Defendant Sabritec also involve alleged attempts to sell products embodying portions of the HiRel Connector. *See* Sixth Amended Compl. at ¶¶ 124–129.

For the same reasons that the claim for relief against Defendants Northrop and ITT may not be time-barred, the claims for relief against Defendant Sabritec may not be time-barred.

### V. *CONCLUSION*

Plaintiff defined its trade secrets broadly, claiming a proprietary interest in the pin layout and *each* pin location. The draft Slash 11 specification, though not an entirely accurate depiction of the HiRel Connector, contained some of Plaintiff's trade secrets. Consequently, its publication on the internet tore the fabric of the relationship between Plaintiff and the Government—the party responsible for its disclosure.

Defendants' motion for summary judgment is GRANTED as to each of the claims for relief against the Federal Defendants, except as to the claim for breach of contract. The remainder of Defendants' motion, addressing Plaintiff's claims for relief against the Private Defendants, is DENIED.

IT IS SO ORDERED.