Filed 2/9/24  Korean American Presbyterian Church v. Park CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| KOREAN AMERICAN PRESBYTERIAN CHURCH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HUN SUNG PARK,<br><br>    Defendant and Respondent. | B313495<br><br>(Los Angeles County Super. Ct. No. BC582128) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Reversed with directions.

PKIMLAW and Donna Bullock Carrera for Plaintiff and Appellant.

McKay, de Lorimier & Acain, Paul A. de Lorimier and Paul W. Park for Defendant and Respondent.

# INTRODUCTION

This is the second appeal in this case, which in turn is one case among many between the various leaders and members of the Korean American Presbyterian Church (KAPC) and the International Reformed University & Seminary (IRUS) in a decades-long dispute over control of the church and its (which is actually part of the dispute) seminary.[1]  In the prior appeal, we reversed a judgment in favor of Hun Sung Park and various other current and former directors of IRUS and directed the trial court to, among other things, grant KAPC leave to amend its complaint to cure a standing deficiency.  After KAPC made that amendment, the trial court dismissed the complaint, agreeing with Park and the other defendants on demurrer that the language of a settlement agreement and release in another

---

[1]  See, e.g., *Korean American Presbyterian Church v. Park* (Nov. 13, 2019, B284852) [nonpub. opn.]; *The Western California Presbytery v. Holy Hill Community Church* (Nov. 1, 2012, B236877) [nonpub. opn.]; *Korean Philadelphia Presbyterian Church v. The California Presbytery* (Apr. 28, 2008, B194519) [nonpub. opn.]; *Korean Philadelphia Presbyterian Church v. Cho* (Sept. 10, 2003, B151945) [nonpub. opn.]; *Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069, 1074; *Korean American Presbyterian Church v. IRUS* (Super. Ct. L.A. County, No. BC687605); *Cho v. Park* (Super. Ct. L.A. County, No. BC582128); *Korean American Presbyterian Church v. Kim* (Super. Ct. L.A. County, No. BC555357); *Korean American Presbyterian Church v. Korean American Presbyterian Church* (Super. Ct. L.A. County, No. BC540136); *IRUS v. Whang* (Super. Ct. L.A. County, No. BC518771).  And that's e.g.

KAPC-IRUS lawsuit barred KAPC's claims in this action.  We reverse again.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *KAPC Sues Park and Others, Loses in the Trial Court, but Obtains a Partial Victory on Appeal*

In May 2015 KAPC and various former directors of IRUS filed this action against Hung Sun Park and others for, among other things, declaratory relief, breach of fiduciary duty, conversion, and trademark infringement.  KAPC alleged that it is a nonprofit religious corporation that operates as a denomination of the Presbyterian Church and that IRUS is a nonprofit public benefit corporation that operates as a seminary for KAPC.  KAPC alleged that in 1979 IRUS "donated the seminary" to KAPC pursuant to a petition by Rev. Chun-Il Cho, who was the president of KAPC at the time.  But then, KAPC claimed, in 2014 "'a dissident faction of apostates' wrested control of IRUS away from KAPC by improperly removing KAPC-affiliated directors from IRUS's board and illegally changing IRUS's bylaws to eliminate any required association with KAPC, thus fundamentally altering IRUS's mission of providing ordained ministers for KAPC."  KAPC also claimed Park and his associates improperly used the KAPC name and trademark to hold themselves out as KAPC.  (*Korean American Presbyterian Church v. Park* (Nov. 13, 2019, B284852) [nonpub. opn.] (*KAPC I*).)

The trial court made several rulings adverse to KAPC, some on demurrer (several of the individual plaintiffs lacked standing), some on summary judgment (another individual plaintiff lacked standing), some at the court trial (KAPC lacked

3

standing to bring a derivative claim and KAPC's trademark claims were barred). Of relevance to this appeal, the trial court ruled a settlement agreement and release in another case, *Korean American Presbyterian Church v. Korean American Presbyterian Church* (Super. Ct. L.A. County, No. BC540136) (*KAPC v. KAPC*), barred KAPC's trademark claims in this action and that an exception or carve-out from that release for claims involved in yet another lawsuit, *IRUS v. John Eun Whang* (which the parties and the trial court refer to as the "*Whang* exception" or the "*Whang* exemption"), did not apply. The court entered judgment in favor of Park and other defendants, and KAPC appealed. (*KAPC I*, *supra*, B284852.)

We reversed. We held that, although KAPC did not have standing as a public benefit corporation under Corporations Code section 5710 to maintain a derivative cause of action on behalf of IRUS against Park and the other defendants, the trial court erred in denying KAPC leave to amend to allege it had standing as a religious corporation under Corporations Code section 9142 to maintain a breach of trust cause of action. We affirmed the trial court's ruling the release in the *KAPC v. KAPC* settlement agreement barred KAPC's trademark claims. In particular, we rejected KAPC's argument the release applied only to the two defendants in this action who were signatories to the settlement agreement, concluding KAPC had forfeited the argument by not making it in the trial court. We did not reach the merits of whether the language of the settlement agreement and release applied to KAPC's trademark claims.

4

B.   *KAPC Files a Third Amended Complaint*

On remand KAPC filed a third amended complaint.  The allegations in that pleading, which we assume are true (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 461), describe some of the details of the dispute among certain individuals involved in, and the opposing factions of, the church.

KAPC alleged in its third amended complaint it "is an ecclesiastical denomination of the Christian faith" whose "primary purpose is to grow churches and maintain order for their particular belief system."  KAPC alleged that it "operates as a denomination of the Presbyterian Church overseeing thirty (30) district presbyteries,[2] six hundred fifty (650) churches, one thousand two hundred fifty (1,250) pastors, and at least sixty thousand (60,000) members."  Park is a pastor who was a member of KAPC.  IRUS is a California religious corporation that

---

[2]    "A presbytery is the basic unit of presbyterian church government, composed of ministers and elders who represent all the particular churches in a certain geographic area and meet regularly as a legislative body.  Presbyteries, in turn, are grouped under the jurisdiction of a synod, the next higher governing body." (*Korean United Presbyterian Church v. Presbytery of the Pacific* (1991) 230 Cal.App.3d 480, 488, disapproved on another ground in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744, fn. 11.)  "A presbytery consists of all the ministers in the geographical area and at least one ruling elder from each individual church.  Each presbytery supervises the churches within its area and has the authority to, among other things, organize and dissolve churches, remove pastors from their pulpits, and suspend the powers of a session," the governing body of a local church. (*Presbytery of Riverside v. Community Church of Palm Springs* (1979) 89 Cal.App.3d 910, 915-916.)

owns property in Los Angeles.  IRUS educates and prepares students to become pastors of KAPC's religious denomination.

In 1979 IRUS "was donated for the benefit of KAPC."  Since that time, "IRUS has accepted the benefits of being a KAPC property including receiving core theological teaching curriculum; the installation of KAPC[-]designated directors on the IRUS Board of Directors; financial benefits; and, continued support from the Denomination in the training of new ordained pastors of the Christian religion."  KAPC has the right to review and approve all aspects of IRUS's "corporate governance, including the appointment of officers and directors; annual financial reports; [and] corporate name changes. . . ."

In 2006 KAPC appointed Park to serve as president of IRUS.  He served until July 2010, when he resigned after "an investigation into the questionable issuance of ministry decrees by the accrediting body known as the Association for Biblical Higher Education."  After his resignation, Park "began a campaign where he and his associates would restock the Board of Directors with those loyal to Park," hold IRUS corporate meetings without notice, and dismiss IRUS directors appointed by KAPC.  In July 2012, after "hotly contested" board meetings and litigation between Park and other church officials, Park "was ostensibly elected as President of IRUS once again."  A complaint was filed with the Western California Presbytery, "a sub-presbytery within the hierarchical structure of KAPC,"[3] and a

---

[3]     The Western California Presbytery (WCP) "is one of several presbyteries within the Korean American Presbytery Church (KAPC).  The WCP and its member churches are governed, in ascending hierarchical order, by the WCP bylaws and . . . KAPC's

6

hearing was scheduled for November 2012. In anticipation of the hearing, however, Park and the new IRUS board amended the articles of incorporation and bylaws of IRUS to renounce KAPC's jurisdiction. The new amendments "eliminated any requirement of KAPC membership and pastoral licensure by board members of IRUS; eliminated any reference of KAPC's role during dissolution of IRUS; and, modified the appointment process for IRUS board members by removing the authority of KAPC from the process." Park also "utilized the KAPC logos and marks" to make it appear "his statements were somehow made jointly with KAPC."

In September 2013 Park "was formally excommunicated from KAPC as a pastor member." In response, Park and his supporters attempted to take over KAPC and "utilized a local church that shared the same name as . . . KAPC in an effort to hold themselves out as the 'true church.'" Park also "continued to advertise in local newspapers that IRUS was still a KAPC institution and that its graduates would become ordained in the KAPC denomination."

KAPC fought back, including by filing lawsuits in superior court. One of these lawsuits was a derivative action against Park, called *Cho v. Park*, designed "to undo the corporate actions performed by" Park. All the third amended complaint alleged about this action was that the "matter was successfully appealed with an order granting [KAPC] leave to amend the pleading."

The other lawsuit was *KAPC v. KAPC*. At some point the parties to this internecine litigation settled, with KAPC

book of church order (BOCO)." (*Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1442.)

"retaining its rights to its name, logo and history as the proper denominational body of KAPC." The settlement agreement included a release that applied to "all claims, demands, causes of action, obligations, damages and liabilities, whether or not now known, suspected or claimed, arising out of or based upon the facts and circumstances giving rise to the Action [i.e., *KAPC v. KAPC*], and any and all transactions or interactions between the Parties prior to the date of this Agreement." The release, however, included an exception, which as stated the parties call the "*Whang* exception." The exception to the release stated: "This Settlement Agreement shall not be construed as releasing any claims or otherwise affecting the matter of International Reformed University and Seminary v John Eun Whang et[] al., bearing case number B518771 and/or any settling parties' claims with regard to the Western California Presbytery or the Holy Hills Community Church. Thus this agreement cannot be used for any purposes in any matters or cases relating to said claims." This appeal is about the language of the *Whang* exception to the release in the *KAPC v. KAPC* settlement agreement.

And what was this lawsuit the parties refer to as the "*Whang* litigation"? It's hard to say. Other than alleging the language of the release and the exception, KAPC's third amended complaint doesn't say much about it. The third amended complaint includes a series of allegations about the settlement agreement and release (and the *Whang* exception), apparently because it was an issue in the prior appeal. KAPC alleges the *Whang* exception "applied to claims that were not resolved on their merits, and have still not been resolved to this day, and that is the illegitimate take-over of IRUS, and Park's wresting of control of IRUS from the control of KAPC." Which sounds a lot

8

like the claims in this lawsuit and many of the other lawsuits that have proliferated throughout the superior court over the recent past. But KAPC alleged that, because the *Whang* exception refers to the Western California Presbytery, and "KAPC is the governing organization for which Western California Presbytery is a subsidiary," the exception applies to this action.[4]

In its third amended complaint, KAPC asserted causes of action for constructive trust, an accounting, declaratory relief, and fraud (but not trademark infringement, because in *KAPC I* we affirmed the dismissal of those claims). Though the first two are not causes of action,[5] KAPC essentially seeks a declaration

---

[4] We know a little bit about the *Whang* litigation because Park asked the trial court to take, and the court took, judicial notice of Whang's cross-complaint in that action. More on that later.

[5] A constructive trust is not a cause of action; it is a remedy. (See *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1485; *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 277, fn. 4; *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 398; *Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 793; *Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1023, fn. 3.) Similarly, an accounting is not an independent cause of action, but a type of remedy that depends on the validity of underlying claims. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on another ground in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 95.)

IRUS holds in trust for KAPC certain property and funds donated to IRUS; an accounting of IRUS's income, assets, and expenses; a declaration of who has the right to control and operate IRUS; and damages for Park's fraudulent misrepresentations to students about IRUS's affiliation with KAPC.

C. *The Trial Court Sustains Park's Demurrer to the Third Amended Complaint*

Park demurred to the third amended complaint, arguing it did not state any cause of action because all of KAPC's claims "have been released" by the settlement agreement in the *KAPC v. KAPC* case.[6] Park also argued that, although the trial court had denied a motion for summary judgment because there were triable issues of fact regarding whether KAPC's claims in this action "affect or relate to those operating in" the *Whang* case, the court should dismiss KAPC's complaint because the *Whang* matter had been resolved. Park argued that, because the *Whang* matter was resolved on the merits pursuant a stipulated judgment, nothing occurring after that stipulated judgment could affect the claims that were "made and adjudicated" in the *Whang* action. Thus, Park asserted, "[r]eleasing Park from KAPC's claims in this matter as a result of the very broad releasing language" of the settlement agreement in *KAPC v. KAPC* "will

_____

[6] As we will discuss, Park had it backward. He was not demurring on the ground KAPC had failed to allege sufficient facts to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)), but rather on the ground the affirmative defense of settlement and release barred KAPC's causes of action. (See *Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1309; *Baker v. Ferrel* (1947) 78 Cal.App.2d 578, 579.)

have no impact upon *Whang*," which meant "the *Whang* exemption does not apply to Park in this instance." Park also argued KAPC failed to allege sufficient facts to constitute a cause of action for fraud.

KAPC argued in opposition to the demurrer that the release in the *KAPC v. KAPC* settlement agreement did not bar KAPC's claims in this action because the *Whang* "carve-out exception" to the release applied to claims "with regard to" the Western California Presbytery, and KAPC brought before that entity the claims KAPC was bringing in this case. KAPC also argued that the *Whang* exception further stated the release "cannot be used for any purposes in any matters or cases relating to said claims," that "said claims" referred to claims in the *Whang* case or claims regarding Western California Presbytery, and that this case, "with its causes of action[] being directly related to Park illegitimately taking control of IRUS, relates to these said claims." KAPC argued that the exception still applied, even though the *Whang* action "no longer exists," because it "has not been fully resolved." KAPC also argued it sufficiently alleged a cause of action for fraud.

The trial court sustained the demurrer without leave to amend. The court ruled that the release barred KAPC's causes of action and that the *Whang* exception did not apply. Referring to the *Whang* exception, the court stated: "The common definition of 'affect' is to 'produce an effect upon.' KAPC relies on the 'relating to said claims' language in the last sentence of the exemption and argues that '[t]his instant case, with its causes of action[ ] being directly related to [Park] illegitimately taking control of IRUS, relates to these said claims.' [Citation.] In this matter, the 'said claims' language refers to the 'claims or

11

otherwise affecting [Whang].'[7]  Therefore, the last sentence of the exemption should be interpreted as reading as follows: the settlement agreement 'cannot be used for any purposes in any matters or cases relating to [claims or otherwise affecting Whang].  KAPC's present claims cannot have a direct effect upon Whang as that matter has concluded.  KAPC's present claims also cannot relate to claims affecting Whang."  The court concluded by stating that, "to the extent certain language in the [settlement agreement] and the carve out could be construed as ambiguous, in light of this Court's prior factual findings, the findings of the Court of Appeal, and, as noticed, the Whang judgments—adverse to all parties and sides, it is clear that Park has been released."

The trial court entered a judgment of dismissal in favor of Park.  KAPC timely appealed.[8]

---

[7]     It is unclear whether the court was referring here to *Whang* the lawsuit or Whang the individual.  The word in the court's order is not italicized.

[8]     KAPC does not argue the trial court erred in sustaining Park's demurrer to the fraud cause of action.

## DISCUSSION

A.    *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *Martin v. Gladstone* (2023) 96 Cal.App.5th 681, 688-689; *Thompson v. Spitzer* (2023) 90 Cal.App.5th 436, 451.)  "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Mathews*, at p. 768, internal quotation marks omitted; accord, *Martin*, at p. 689; *Lauckhart v. El Macero Homeowners Assn.* (2023) 92 Cal.App.5th 889, 899.)  "'[W]e accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'" (*Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 104-105; see *Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 618, fn. 12 ["when California trial courts consider a demurrer, '"the facts alleged in the pleading are deemed to be true, however improbable they may be"'"]; see also *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 ["the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court"].)  "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Mathews*, at p. 768, internal quotation marks omitted; accord, *Lauckhart*, at p. 899; *Marina Pacific*, at p. 105.)

"We interpret a release or settlement agreement under the same rules of construction that apply to contracts generally.

13

[Citations.]  We interpret a contract to give effect to the mutual intention of the parties at the time they formed the contract. [Citations.]  We discern the parties' intention based on the written contract alone, if possible, but may also consider the circumstances under which the contract was made and its subject matter.  [Citations.]  We consider the contract as a whole, and interpret contested provisions in their context, not in isolation, with the aim of giving effect to all provisions, if doing so is reasonably possible." (*Camacho v. Target Corp.* (2018) 24 Cal.App.5th 291, 306.)

"'An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing.  [Citations.]  An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence.'" (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1357; accord, *Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 722; see *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 ["'[a]n ambiguity arises when language is reasonably susceptible of more than one application to material facts'"]; *Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281, 1287-1288 ["If an alternative, '"semantically reasonable"' meaning exists the release is ambiguous."].)  The court generally cannot resolve a contractual ambiguity on demurrer.  (See *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 672 [ambiguity in a settlement agreement could not be resolved on demurrer].)

As stated, settlement or release is an affirmative defense. (*Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1309; *Baker v. Ferrel* (1947) 78 Cal.App.2d 578, 579.)  "'"[A] demurrer based on an affirmative defense will

14

be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.""'" (*Silva v. Langford* (2022) 79 Cal.App.5th 710, 716; accord, *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 622; see *Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 992.)

        B.     *The Trial Court Erred in Sustaining Park's Demurrer to the Third Amended Complaint*

As discussed, the release in the *KAPC v. KAPC* settlement agreement contained a mutual release of all claims and transactions "arising out of or based upon the facts and circumstances giving rise to" the lawsuit between the two KAPCs. The parties do not dispute the meaning of this part of the release; they dispute the meaning of the exception at the end of the release. As quoted, that language stated: "This Settlement Agreement shall not be construed as releasing any claims or otherwise affecting the matter of International Reformed University and Seminary v. John Eun Whang et[] al., bearing case number BC518771 and/or any settling parties' claims with regard to the Western California Presbytery or the Holy Hills Community Church. Thus this agreement cannot be used for any purposes in any matters or cases relating to said claims."

The trial court ruled the release applied and the exception did not because the *Whang* case was over (by stipulated judgment), which meant KAPC's claims in this action could not have affected the *Whang* matter. After all, it's hard to affect a lawsuit that's over. The trial court also ruled the language "cannot be used for any purposes in any matters or cases relating to said claims" meant "cannot be used for any purposes in any

15

matters or cases relating to claims or otherwise affecting Whang."

Well, that's one possible interpretation. But here's another one: The first half of the first sentence of the *Whang* exception ("[t]his Settlement Agreement shall not be construed as releasing any claims or otherwise affecting the" *Whang* case) may no longer apply because, now that the *Whang* case is resolved, nothing (in this case or otherwise) can affect it. Fair enough. But the second half of the first sentence, which continues after "and/or" ("[t]his Settlement Agreement shall not be construed as releasing . . . any settling parties' claims with regard to the Western California Presbytery"), may still apply. KAPC was a "settling party" in *KAPC v. KAPC*. It had claims that related to (were "with regard to") Western California Presbytery (and, for that matter, Holy Hill Community Church). Those claims were not released, and KAPC is pursuing them in this action. Therefore, under this equally (if not more) reasonable interpretation of the *Whang* exception, the release in the settlement agreement does not apply, at least on demurrer. (See *Russell City Energy Co., LLC v. City of Hayward (*2017) 14 Cal.App.5th 54, 62 ["So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement. (internal quotation marks omitted)"]; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1385 [same].)

But there's more: The second sentence of the *Whang* exception stated the settlement agreement "cannot be used for any purposes in any matters or cases relating to said claims." Park "used" the settlement agreement for a purpose in this case:

16

to bar KAPC's claims and obtain judgment on the pleadings. A legitimate purpose, to be sure, but a purpose. And which claims are "said claims"? The trial court ruled that "said claims" meant "claims or otherwise affecting" Whang and that the second sentence meant the settlement agreement could not be used for any purpose in any matters or cases relating to claims or otherwise affecting Whang. That's one possible interpretation (although the sentence doesn't say that; the trial court imported the phrase "claims or otherwise affecting Whang" from the first half of the first sentence and added it to the end of the second). But an equally, if not more, reasonable interpretation is that "said claims" referred to what the exemption is about: the claims of the settling parties "with regard to" the Western California Presbytery (and, though not relevant here, Holy Hill Community Church). That's what KAPC (quite reasonably) alleges it means, and on demurrer we accept that interpretation. (See *Aluma Systems Concrete Construction of California v. Nibbi Bros. Inc.* (2016) 2 Cal.App.5th 620, 626 [even if the defendant's "construction of the Contract were possible, we must accept [the plaintiff's] reasonable interpretation for purposes of . . . demurrer"]; *Marzec v. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889, 909 ["""So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement."""]; *Performance Plastering v. Richmond American Homes of California, Inc., supra,* 153 Cal.App.4th at p. 672 [where a term in a "settlement agreement is arguably ambiguous," the court "must accept [the plaintiff's] reasonable

17

interpretation of the terms of the settlement agreement in testing the sufficiency of the complaint"].)

Indeed, KAPC's claims in this action relate directly to the claims involving Western California Presbytery that KAPC asserted in *KAPC v. KAPC*, bringing those claims even further within the ambit of the *Whang* exception. Remember that in this action KAPC alleged Park and his associates wrongfully removed the president of IRUS and arranged to have himself re-installed as the president? Well, Whang was the president Park deposed. Here's what Whang alleged about that in his cross-complaint in *IRUS v. Whang*: In 1979 IRUS was donated to KAPC and became "subject to the management and control of KAPC"; in 2006 Park became president of IRUS; in July 2010 Park "resigned in disgrace as the President of IRUS and . . . Whang was elected as the new President"; in July 2012 Park "was illegally-elected [*sic*] as the new President of IRUS"; and in the fall of 2012 Park "committed an act of tergiversation by purportedly holding a special meeting of the" IRUS board of directors "to amend the Bylaws of IRUS to remove the provision requiring IRUS to adhere to the direction, management, control and guidance of KAPC," which "apostasy violated the entire basis for donating IRUS to KAPC in 1979."[9] Whang further alleged in his cross-complaint that he filed a complaint with the "Central Los Angeles Presbytery (a local presbytery of KAPC)" and that

---

[9]     "Tergiversation is defined as '[t]he action of "turning one's back on" i.e. forsaking, something in which one was previously engaged, interested, or concerned; desertion or abandonment of a cause, party, etc.; apostasy, renegation.'" (B. Handler, *Abandoning the Cause: An Interstate Comparison of Candidate Withdrawal and Replacement Laws* (2004) 37 Colum. J.L. & Soc. Probs. 413, 446.)

there was a "Church Trial" with "the California Presbytery and the Central Los Angeles Presbytery." Whang asserted causes of action for, among other things, injunctive relief to enjoin Park and others from managing and controlling IRUS and using IRUS's name, logo, or materials; declaratory relief regarding who was in charge of IRUS; constructive trust over IRUS's property and income; and an accounting of IRUS's assets, liabilities, income, and expenses. Sure sounds a lot like KAPC's claims in this case, and the very kind of claims the *Whang* exception was drafted not to release.

We need not decide now which interpretation of the *Whang* exception is more reasonable. That very well may have to await the trial court's evaluation of extrinsic evidence. (See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 [extrinsic evidence "is admissible to resolve ambiguities in the contract's language"]; *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1350 [courts may consider extrinsic evidence in ascertaining the meaning of an ambiguous contractual term]; *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 350 [parol evidence is admissible to resolve an ambiguity in a release].) We can safely conclude, however, that at the pleading stage both interpretations are reasonable and that the trial court erred in sustaining Park's demurrer based on the settlement agreement and release. (See *People v. Superior Court (J.C. Penney Corp., Inc.)* (2019) 34 Cal.App.5th 376, 399 [a "'demurrer based on an affirmative defense cannot properly be sustained where the action *might* be barred by the defense, but is not *necessarily* barred'"]; *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635 [same]; see also *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191

19

["'a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense'"].)

The trial court also ruled that, to the extent there was any ambiguity in the settlement agreement and the *Whang* exception, the release still applied because of the trial court's "prior factual findings" and "the findings of" this court in *KAPC I*. Both reasons were flawed. Whatever the trial court's prior factual findings were, they were irrelevant on demurrer. (See *Payne v. Rader* (2008) 167 Cal.App.4th 1569, 1575 ["a ruling on a demurrer does not involve either admission of evidence or findings of fact"], disapproved on another ground in *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 135, fn. 4; *Mink v. Maccabee* (2004) 121 Cal.App.4th 835, 839 ["a demurrer does not permit the trial court to make any factual findings at all, including 'implicit' ones"].) And we did not make any findings in *KAPC I*. We rarely do. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly," and "[a]*bsent exceptional circumstances, no such findings should be made*."]; *Technology Credit Union v. Rafat* (2022) 82 Cal.App.5th 314, 323 [same].) As discussed, in *KAPC I* we affirmed the dismissal of KAPC's trademark claims and directed the trial court to give leave to amend to allege standing to assert KAPC's other claims.

20

C.     *The Law of the Case Doctrine Did Not Apply*

Park argues that we held in *KAPC I* the settlement agreement released Park and that our decision in *KAPC I* is law of the case.  Not quite.

Under the law of the case doctrine, "a matter adjudicated on a prior appeal normally will not be relitigated on a subsequent appeal in the same case."  (*Davies v. Krasna* (1975) 14 Cal.3d 502, 507; see *People v. Barragan* (2004) 32 Cal.4th 236, 246 ["when an appellate court "'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal"'"]; *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434 ["The rule of 'law of the case' generally precludes multiple appellate review of the same issue in a single case."].)  "The doctrine applies to decisions of intermediate appellate courts as well as courts of last resort" (*San Francisco Baykeeper, Inc. v. State Lands Com.* (2018) 29 Cal.App.5th 562, 569, fn. 4), and ""'even if the court that issued the opinion becomes convinced in a subsequent consideration that the former opinion is erroneous"'" (*Finato v. Keith A. Fink & Associates* (2021) 68 Cal.App.5th 136, 148).  The doctrine promotes finality by preventing relitigation of issues previously decided.  (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291; *Searle*, at p. 434.)

In *KAPC I* we held the settlement and release barred KAPC's trademark claims.  *KAPC I* did not involve, and we did not adjudicate, whether the settlement and release barred any other causes of action.  Indeed, we did not really decide that the *Whang* exception did not apply to KAPC's trademark claims; we

21

held only that KAPC forfeited its right to make the argument. Either way, the law of the case doctrine does not apply here.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order sustaining KAPC's demurrer to the third amended complaint and enter a new order sustaining the demurrer to KAPC's fraud cause of action without leave to amend and otherwise overruling the demurrer.  KAPC is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.

22